James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff,

Ohio AFL–CIO, Intervening Plaintiff,

Henry J. Whitsett, James Devonshire, Sr., Enoch Gray, and Nicholas Gonzalez, Intervening Plaintiffs,

v.

The CLEVELAND MUNICIPAL COURT et al., Defendants,

Ohio State Council of Retail Merchants, Troy Bass, d.b.a. Bass Clothiers of Columbus, Ohio, and the Higbee Company of Cleveland, Intervening Defendants,

The State of Ohio, William J. Brown, Attorney General, Intervening Defendant.

Civ. A. No. C 70–908.

United States District Court, N. D. Ohio, E. D.

March 19, 1971.

**422**

A. A. Caghan, Regional Atty., United States Dept. of Labor, Cleveland, Ohio, for James D. Hodgson, Secretary of Labor.

Stewart R. Jaffy, of Clayman, Jaffy & Taylor, Columbus, Ohio, for Ohio AFL-CIO.

Wilbur Leatherberry, Legal Aid Society of Cleveland, Ohio.

Richard Carter Irvin, Legal Aid and Defender Society, Columbus, Ohio, for Whitsett, Devonshire, Gray, Gonzalez.

Donald J. Guittar, Asst. Law Director, City of Cleveland, Cleveland, Ohio, for The Cleveland Municipal Court, the Chief Justice, and individual judges of the Cleveland Municipal Court, and Helen Lyons, Clerk of Court.

John E. Martindale and Joseph A. Rotolo, of Arter & Hadden, Cleveland, Ohio, for Ohio State Council of Retail Merchants, Bass, and Higbee Co.

Charles S. Rawlings, Asst. Atty. Gen., State of Ohio, Columbus, Ohio, for The State of Ohio, William J. Brown, Atty. Gen.

MEMORANDUM AND ORDER

WILLIAM K. THOMAS, District Judge.

James D. Hodgson, Secretary of Labor, United States Department of Labor (hereafter Secretary), sues the Cleveland Municipal Court, its judges, and Helen J. Lyons, Clerk of the Court, to enforce the provisions for restrictions of garnishment in the Consumer Credit Protection Act (Pub.L. 90–321 (May 29, 1968), 82 Stat. 146).

This action involves a confrontation of the new Federal garnishment laws that became effective July 1, 1970, and the revised garnishment laws of the State of Ohio that went into effect on September 16, 1970.

The Consumer Credit Protection Act (hereafter CCPA) became effective on enactment on May 29, 1968. Title III—"Restriction on Garnishment" became effective July 1, 1970, and includes sections 301–307. It is codified as Subchapter II "Restrictions on Garnishment," Chapter 41 "Consumer Credit

Protection," 15 U.S.C. §§ 1671–1677 (1968). In this opinion the designations "Title III," "this title," "Subchapter II," and "this subchapter" are used interchangeably. Sections 301–307 of Title III correspond to sections 1671–1677 and are also used interchangeably.

Noting that Title III was to be effective July 1, 1970, the Ohio General Assembly enacted on June 5, 1970, Amended Substitute Senate Bill No. 85. S.B. 85 recites in its preamble:

> To amend sections 1911.34, 1911.35, 1911.37, 2323.13, 2329.62, 2329.66, 2329.67, 2715.01, 2715.02, 2715.13, 2715.17, 2715.19, 2715.29, and 2715.-30, to enact sections 1911.331, 1911.-332, 2329.621, 2715.111, and 2715.112, and new sections 1911.33 and 2715.11, and to repeal sections 1911.33, 1911.-36, 1911.38, 1911.39, and 2715.11 of the Revised Code relative to the garnishment of personal earnings and the requirements of cognovit notes.

Enacting a statement of intention of the General Assembly, Ohio Rev.Code § 2329.621, one of the new sections, declares, in part:

> It is the intention of the General Assembly to avoid the inevitable confusion which will result if any part of the Federal act is superimposed on Ohio law, by enacting garnishment laws which provide protection to debtors which equals or exceeds that contained in the Federal law, and all the laws of this State affecting such garnishments shall be construed so as to effect this purpose.

Whether S.B. 85 successfully avoids the superimposition, i. e., preemption, of "any part of the Federal act" is the overpowering question demanding decision.

Jurisdiction of this court to hear this action is admitted. Federal jurisdiction is multiple. By 28 U.S.C. § 1337 (1948) this court has jurisdiction to hear a case that arises under the Act, a law regulating interstate commerce. By 28 U.S.C. § 1334 (1948) this court has original jurisdiction, exclusive of the courts of the states, of all matters and proceed-ings in bankruptcy. A stated purpose of the Act is to supersede state garnishment laws that have "destroyed the uniformity of the bankruptcy laws." Title III, § 301(a) (3).

By 28 U.S.C. § 1331 (1958) this court has original jurisdiction of all civil actions where the matter in controversy exceeds the sum of $10,000 and arises under the Constitution, laws or treaties of the United States. This case arises under the Constitution (Article I, Sec. 8, Clause 3, Regulation of Commerce, and Clause 4, Bankruptcy). The some 34,000 garnishments processed annually by the Cleveland Municipal Court involve a sum that exceeds $10,000. Jurisdiction to bring an action for declaratory relief rests on 28 U.S.C. § 2201 (1958).

On September 23, 1970, a week after the revised Ohio garnishment laws became effective, the Secretary filed his complaint against the previously named defendants. Other parties have since entered the case. At the pretrial hearing of February 5, 1971, the court granted the application of Attorney General of Ohio William J. Brown to become a new party defendant. At the same time the court granted the similar application of the Ohio State Council of Retail Merchants, Troy Bass d.b.a. Bass Clothiers of Columbus, Ohio and The Higbee Company of Cleveland, Ohio.

At the merits hearing of February 26, 1971, the court granted the application of five individual debtors and the State AFL-CIO to become new party plaintiffs.

The applications for intervention as new party plaintiffs and defendants were permitted under Rule 24(b), Federal Rules of Civil Procedure.

### I.

The Secretary's complaint reaches the substance of his claim in Paragraph IV. Its first subparagraph states:

> Effective on September 16, 1970, the defendants have adopted for the purposes of garnishment procedures in the Cleveland Municipal Court, Cuyahoga County, Ohio, a printed form

entitled "AFFIDAVIT AND ORDER AND NOTICE OF GARNISHMENT AND ANSWER OF EMPLOYER,"

\* \* \*

This subparagraph of Paragraph IV concludes:

A portion of this form is "Section B: ANSWER OF EMPLOYER (GARNISHEE)" which sets out the precise manner in which the employers (garnishee) are ordered by defendants to compute and to pay into court for disbursement by defendant, Helen Lyons, Clerk of Court, to judgment creditors the amounts which the employers (garnishee) have been required by orders of defendants to withhold from the personal earnings of employees.

This first subparagraph of Paragraph IV is not in dispute. What creates the controversy in the case are the remaining paragraphs of the complaint, denied by all defendants.

In Paragraph IV, 2nd paragraph, the Secretary alleges:

The wording of Section B of this form, while virtually identical to the language prescribed in section 1911.332 of the Ohio Revised Code (effective on September 16, 1970) does not include or make provision for the application of the garnishment restrictions in Title III of the Consumer Credit Protection Act (15 U.S.C. sections 1671 to 1677) which have superseded and pre-empted the garnishment provisions of State law except those which provide for more limited garnishments than are allowed under Title III of the Consumer Credit Protection Act.

Paragraph V of the complaint claims:

The use of said form and the procedures provided therein has resulted and will continue in the future to result in violations by defendants of the garnishment restrictions of 15 U.S.C. section 1673 in virtually all garnishment proceedings of the Cleveland Municipal Court against personal earnings of debtors who are paid on a weekly, bi-weekly or semi-monthly basis.

Paragraph VI, the last paragraph of the complaint prior to the prayer, asserts:

Unless a declaration is made by this Court that such action by defendants is in contravention of law and unless such conduct is enjoined by this Court, there will be irreparable damage to judgment debtors whose personal earnings are now being illegally withheld and paid over to judgment creditors, and will continue in other cases to be withheld and paid over to judgment creditors; and further that there will be necessitated a multiplicity of litigation actions filed in this Court, and in other courts, by the Secretary of Labor, plaintiff herein, or by individual debtors whose garnishment rights have been violated

\* \* \*.

Paragraph IV of the complaint indicates that the Cleveland Municipal Court printed form, "Affidavit and Order and Notice of Garnishment and Answer of Employer," effective September 16, 1970, is "virtually identical to the language prescribed in section 1911.332 of the Ohio Revised Code." For clarity of understanding this section will be placed in context.

Under Ohio's revised garnishment laws in bringing a garnishment action in county courts (but also applicable to municipal courts), a creditor or his attorney must first file an affidavit as prescribed in Ohio Rev.Code § 1911.33 (1970). An identical affidavit is required by Ohio Rev.Code § 2715.11 (1970) in common pleas court garnishment actions. Among the conditions of the affidavit is mailing the demand in writing to the defendant (employee) (Ohio Rev.Code § 2715.02 (1970) requires registered or certified letter, return receipt requested).

Entitled "Notice of Court Action to Collect Debt," the prescribed notice informs the person that he owes the undersigned creditor the stated dollar amount for which the judgment was obtained against him in the designated court, "payment of which is hereby demanded." He is told that if he does not pay within 15 days the creditor will go to court, and ask his

employer to withhold money from his earnings and pay it to the court to satisfy the debt. It says, "This is called garnishment." After warning him of possible job loss, he is told that he can avoid the garnishment by doing one of three things within the next 15 days:

(1) Pay to us the amount due;

(2) Complete the attached form entitled "Payment to Avoid Garnishment" and return it to us with the payment, if any, shown due on it; or

(3) Apply [for a trusteeship arrangement as explained.]

The form "Payment to Avoid Garnishment" is identical with the form "Answer of Employer (Garnishee)" contained in Section B of Ohio Rev.Code § 1911.332 (1970) applicable to garnishment actions in county (and municipal courts), and by Ohio Rev.Code § 2715.112 (1970), the form "Answer of Employer (Garnishee)" is also made applicable to garnishment proceedings in Ohio common pleas courts.

The form "Answer of Employer (Garnishee)" contained in Ohio Rev.Code § 1911.332 (1911.332 (1970) provides a statutory formula for enforcing in garnishment proceedings the personal earnings exemptions of Ohio Rev.Code §§ 2329.62 (1970) and 2329.66 (1970). These latter sections exempt from execution and attachment the designated property of the chief support of a family (section 2329.66) and other persons (section 2329.62).

Ohio Rev.Code § 1911.332 (1970) provides for service of copies of the order of attachment on the garnishee. Section A specifies the form of "Court Order and Notice of Garnishment." Section B prescribes the form "Answer of Employer (Garnishee)." It first asks whether the defendant is in his employ. It next asks "Has defendant been garnisheed within the 30 days preceding the date of service of this form." If the answer is "Yes," the employer is directed to omit the remaining questions in the form, and return it to the court. This is because of new section 1911.33(B) (1970) (ap-

plicable to garnishments in county and municipal courts), and new section 2715.-11(B) (1970) (applicable to garnishment actions in common pleas courts) that limit garnishments of personal earnings to one a month per debtor. Question 3 asks for the amount owed the defendant "for services before this form was received." Question 4 requires the employer to:

Enter earnings of the defendant, after deductions required by law, for the previous monthly pay period (if the defendant has not been employed a full month, enter the amount of monthly pay at present pay rate):

Question 5 directs the employer to:

Enter the lesser of ———— (a) an amount equal to 17.5% of the amount of line 4; or (b) the amount by which the amount on line 4 exceeds $———— (175 times the current federal minimum hourly wage):

The final question, 6, requires the employer to:

Enter the smallest of the amount entered on line 3; or the amount entered on line 5; or the amount on line C of Section A of this form. [The total probable amount owed.] Pay this amount into court when returning this form.

In his complaint the Secretary contends that the use of the Cleveland Municipal Court's "Answer of Employer (Garnishee) form and the procedures provided therein violates the garnishment restrictions of 15 U.S.C. § 1673 (1970). It is contended this is so because the form, following Ohio Rev.Code § 1911.332 (1970), subjects to garnishment 17½ percent of the disposable earnings for the whole month. In contrast, 15 U.S.C. § 1673(a) fixes a maximum subject to garnishment of:

(1) 25 per centum of his disposable earnings for that week, * * *.

It is contended that application of the State exemption formula can garnishee 70 percent or more of the disposable earnings of a worker who is paid weekly rather than monthly.

The prayer of the Secretary's complaint seeks "a declaration by this Court that the conduct alleged above is in violation of the Consumer Credit Protection Act, sections 1671 to 1677." Preliminary and permanent injunctive relief is requested against the defendants Cleveland Municipal Court and its Clerk.

## II.

On September 25, 1970, a hearing was held on the plaintiffs' request for a preliminary injunction against the Cleveland Municipal Court's use of the garnishment forms based on the newly effective Ohio garnishment laws.

At the end of the hearing this court rendered "an interlocutory memorandum and an interlocutory order." In the course of the oral memorandum this court thus construed the relevant Ohio garnishment provisions:

On its face, the parenthetic matter of Paragraph 4 of Section B set forth in the order in Ohio Revised Code 1911.332, the corresponding language in the notice requirements of Ohio Revised Code 2715.02 and the corresponding language set forth in the present Affidavit and Order and Notice of Garnishment and Answer of Employer, * * * must be construed together with the exemption provisions of Ohio Revised Code 2329.62 and Ohio Revised Code 2329.66 and the intent of the Ohio Legislature expressed in Ohio Revised Code 2329.621 that the Ohio act should be construed in conjunction with the Consumer Credit Bill; namely, 15 U.S.C., Section 1671 and following sections.

Continuing,

So construed, these several sections of law, pursuant to which the Municipal Court of Cleveland drafted the Affidavit and Order and Notice to which I have alluded, will be interpreted in a manner so as to uphold the constitutionality of these several sections and to avoid a holding that would result in unequal protection of laws contrary to the Fourteenth Amendment of the United States Constitution as between wage earner-debtors: i. e., those whose earnings subject to garnishment may represent all and those that represent less than all of the previous 30-day period in which compensation was earned and became due and owing immediately prior to garnishment.

Concluding,

Accordingly, it is declared and determined that the exemptions set forth in said Ohio Revised Code Sections 2329.62 and 2329.66 shall be understood and construed to mean and apply to actual earnings due and owing during the 30-day period immediately prior to garnishment.

Later in the oral memorandum this was narrowed:

[T]o the proposition that those disposable earnings that shall be subject to garnishment shall refer to actual earnings due and owing an employee at the time of garnishment.

In the memorandum reference was made to 15 U.S.C. § 1675 (1970) providing for State-regulated garnishment. It was noted that the Ohio Attorney General had sought such exemption for the Ohio law; and that "there has not yet been a determination * * * by the Secretary of Labor with reference to the requested exemption of the Ohio law."

It was further observed that:

[W]e do have an important question of whether the Federal law can and does preempt the Ohio law, and this is too early a stage in this case to make any kind of a definitive ruling on that point.

Therefore, the court stated:

I do expressly reserve [the] ruling on whether or not the Federal law does preempt the Ohio law and whether, if the Federal law does preempt the Ohio law, Section 1673(a)(2) would require any modification of the order that I am hereafter going to enter.

In part, the order of preliminary injunction entered on September 30, 1970, ordered:

\* \* \* \* \* \*

1. That no such garnishment of personal earnings shall exceed 17½ percent of the disposable earnings of the debtor which are *actually* due, owing and payable from the garnishee at time of garnishment, and which were earned during *all or any part of* the preceding 30 days, or the excess of such disposable earnings over the debtor's statutory exemption in Ohio of $280 per month, whichever is less.

\* \* \*

2. That appropriate forms and procedures shall be prepared and adopted not later than *Thursday*, October 15, 1970, which will carry out the order in paragraph 1 above. \* \* \*

\* \* \* \* \* \*

The term of Paul W. Brown as Attorney General of Ohio ended on January 11, 1971. At that time he was succeeded by William J. Brown, elected Attorney General of Ohio at the November 1970 general election. Attorney General Paul W. Brown, by his assistant attorney general, participated in the September 25, 1970 hearing on the preliminary injunction. At this hearing it was suggested that he submit a supplemental memorandum in support of Ohio's application for exemption filed with the Secretary, pursuant to 15 U.S.C. § 1675 (1970). He did so. This section provides:

The Secretary of Labor may by regulation exempt from the provisions of section 1673(a) of this title garnishments issued under the laws of any State if he determines that the laws of that State provide restrictions on garnishment which are substantially similar to those provided in section 1673(a) of this title.

Robert D. Moran, Administrator of the Wage and Hour Division, delegate of the Secretary of Labor, on November 25, 1970, denied the application of the State of Ohio for an exemption under section 305, CCPA. In his written opinion he refers, in part, to the arguments of the Attorney General of Ohio presented to the Administrator:

To this end, both his written presentation and the oral presentations of the Attorney General's representatives emphasize the totality of protection afforded to debtors by the provisions in the Ohio law; e. g., substantial prohibition of garnishment before judgment; garnishment of personal earnings is permitted only once in any thirty-day period; only 17½ percent of personal earnings for any monthly period, (as opposed to 25 percent under the Federal law) or 175 times the current federal minimum hourly wage ($280 per month), as opposed to $208 per month under the Federal law; a fifteen-day notice provision to inform a debtor of the pending possibility of the garnishment of his wages and the options available to him for avoiding garnishment; etc.

Referring to these beneficial provisions of the Ohio law, the Administrator comments:

Such obviously salutary features of the Ohio law as limitations on prejudgment garnishment and notice requirements, which cannot be measured with the restrictions of section 303(a), are thus excluded from consideration. Section 305 does not appear to contemplate a broad jurisprudential balancing or measurement. Rather, it seems to intend a measurement of only that which may be subject of tangible comparison.

His opinion raises,

The critical question \* \* \* whether Ohio law may be considered "substantially similar" to section 303 (a) \* \* \* because the overall monthly protection to an individual \* \* \* is greater under the Ohio law, even though the Ohio law does permit a garnishment much greater than section 303(a) for one pay period.

The opinion continues:

The importance of the question can be demonstrated by the fact that a re-

cent BLS survey [Bulletin 1625–90 (BLS) (1970)] of large cities throughout the United States indicates that the overwhelming majority of plant workers and office workers received wage payments for smaller than monthly pay periods. In the Ohio cities surveyed, more than 88 percent of all plant workers received payment weekly and in some Ohio cities the weekly pay rate is as high as 98 percent (Dayton). Of the office workers in the Ohio cities covered in the survey, less than 34 percent are paid weekly, 25 percent are paid biweekly, and 41 percent are paid semi-monthly, and 3 percent are paid monthly. Only in Columbus are an appreciable percentage of office workers paid monthly.

The Administrator concluded:

[D]espite the fact that the Ohio law does generally provide broader debtor protection on a monthly basis, the clear statement of Congress in section 303 addresses itself to restrictions on garnishment in terms of disposable earnings for any workweek or other pay period and forecloses the granting of the present application.

It is determined, and the parties agree, that the Administrator's denial of the application of the State of Ohio for exemption under section 1675 from the provisions of section 1673(a) does not control the issue of Federal preemption. Nor does the Administrator's ruling bind any of the parties on the basic issue of Federal preemption in this action. Subchapter II—Restrictions on Garnishment and section 1675 therein make no provision for judicial review of any exemption ruling by the Administrator of the Wage and Hour Division.

### III.

Before studying the provisions of the title that bear directly on the Federal preemption question, the question of the constitutionality and validity of Title III —Restriction on Garnishment requires attention.

The CCPA consists of three titles. Titles I and III are now codified into 15 U.S.C., Commerce and Trade, Chapter 41, Consumer Credit Protection. Subchapter I—Consumer Credit Cost Disclosure corresponds to Title I of the Act (Truth-in-Lending Act), and contains three parts: Part A, General Provisions; Part B, Credit Transactions, and Part C, Credit Advertising. These are codified into 15 U.S.C. §§ 1601–1613; 15 U.S.C. §§ 1631–1641; and 15 U.S.C. §§ 1661–1665.

Title II of the Act (prohibiting extortionate credit transactions) is codified into 18 U.S.C. §§ 891–896.

Title III of the Act, section 301 (15 U.S.C. § 1671) lists three congressional findings:

(1) The unrestricted garnishment of compensation due for personal services encourages the making of predatory extensions of credit. Such extensions of credit divert money into excessive credit payments and thereby hinder the production and flow of goods in interstate commerce.

(2) The application of garnishment as a creditors' remedy frequently results in loss of employment by the debtor, and the resulting disruption of employment, production, and consumption constitutes a substantial burden on interstate commerce.

(3) The great disparities among the laws of the several States relating to garnishment have, in effect, destroyed the uniformity of the bankruptcy laws and frustrated the purposes thereof in many areas of the country.

This is followed by a declaration of congressional purpose in section 1671(b):

(b) On the basis of the findings stated in subsection (a) of this section, the Congress determines that the provisions of this subchapter are necessary and proper for the purpose of carrying into execution the powers of the Congress to regulate commerce and to establish uniform bankruptcy laws.

These congressional findings and declarations of purpose are convincingly

corroborated by the legislative history. In conference, H.R. 11601 and S. 5 were melded into the Consumer Credit Protection Act. In the Act, H.R. 11601 furnishes most of the final content. The House Report and the Conference Report are set out in 2 U.S.Cong.News '68, at 1962. The House Report was prepared by the Committee on Banking and Currency which had conducted long hearings on H.R. 11601. The following excerpts at 1978 are representative of the House Report. The Committee notes that:

> Levels of personal bankruptcies have risen at truly alarming rates. While such bankruptcies were at a level of 18,000 per year in 1950, for the fiscal year ending June 30, 1967, personal bankruptcies had risen to 208,000. Personal debts canceled by virtue of such consumer bankruptcies reached approximately $1.5 billion in that year.

> \* \* \*

The Committee then reaches this decisive conclusion:

> Testimony and evidence received by your committee clearly established a causal connection between harsh garnishment laws and high levels of personal bankruptcies. \* \* \* In States such as Pennsylvania and Texas, which prohibit the garnishment of wages, the number of nonbusiness bankruptcies per 100,000 population are nine and five respectively, while in those States having relatively harsh garnishment laws, the incidents of personal bankruptcies range between 200 to 300 per 100,000 population.

Particularly pertinent is the Ohio story:

> Ohio, with about the same population as Texas, has nearly 50 times more bankruptcies. Ohio permits garnishments; Texas does not. \* \* \* [Congressman Gonsalez, Cong.Rec. House (2/1/68) at 1834.]

It is manifest that Congress had a rational basis for determining that the CCPA was needed to carry "into execution the powers of Congress to regulate commerce and to establish uniform bankruptcy laws." This ends the judicial investigation. Katzenbach v. McClung, 379 U.S. 294, 303–304, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964). On a parallel track the constitutionality and validity of Title II of the Act, "Prohibited Extortionate Credit Transactions," have already been upheld. See United States v. Biancofiori, 422 F.2d 584 (7th Cir. 1970) and United States v. Perez, 426 F.2d 1073 (2d Cir. 1970). It is, therefore, determined and declared that Title III—Restriction on Garnishment, is a constitutional and valid exercise of congressional power.

### IV.

Title 15 U.S.C. § 1672 defines the key words "earnings," "disposable earnings," and "garnishment." The term "disposable earnings" is defined as

> [T]hat part of the earnings of any individual remaining after the deductions from those earnings of any amounts required by law to be withheld.

The term "garnishment" is defined as

> [A]ny legal or equitable procedure through which the equitable earnings of an individual are required to be withheld for payment of any debt.

Entitled "Restriction on Garnishment," section 1673(a) imposes a maximum on the "aggregate disposable earnings of an individual for any workweek which is subjected to garnishment \* \* \*." This maximum "may not exceed" the lesser of two amounts:

> (1) 25 per centum of his disposable earnings for that week, or

> (2) The amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage \* \* \*.

Applying the present Federal wage minimum of $1.60 per hour, section 1673 (a) fixes as the maximum aggregate disposable earnings subject to garnishment, 25 percent of an employee's weekly disposable earnings, or $48 (30 x $1.60), whichever amount is less.

This garnishment shield of section 1673(a) is expressly shaped to fit

"any workweek," and that week's "disposable earnings." Use of the week as the unit for computing the maximum of disposable earnings subject to garnishment is a reasonable exercise of legislative power. Congress has determined that weekly wage earners especially need to be protected from excessive garnishment. Area wage surveys of the United States Department of Labor, received in evidence, disclose that throughout the country the overwhelming majority of plant workers are paid on a weekly basis, and a majority of office workers are paid on a weekly or bi-weekly basis. Congressional selection of an employee's weekly disposable earnings as the unit for computing his garnishment maximum is made plain in Conf.Rept.No. 1397, 90th Cong.; 2d Sess. p. 2029 (1968). Headed, Title III—Restrictions on Garnishment, the Report states:

> No garnishment is allowed which would exceed either 25 percent of disposable earnings, or the amount by which the weekly disposable earnings exceed 30 times the Federal minimum hourly wage, whichever is less.

■ This reference further reveals congressional intention to make mandatory the legislated restrictions on garnishment. It is written into law. Section 1673(a) uses the phrase "may not exceed." Title V—General Provisions of the Consumer Credit Protection Act, Section 503 (not codified in the United States Code), recites "grammatical usages." In part, it states:

> (3) The phrase "may not" is used to indicate that an action is both unauthorized and forbidden.

In its last sentence, section 1673(a) orders the Secretary to prescribe by regulation:

> In the case of earnings for any pay period other than a week, * * * a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2).

After giving notice on December 5, 1969 in the Federal Register of the proposed rule making on the subject, the Secretary on May 25, 1970, amended 29 C.F. R. ¶ V, by adding Part 870. Paragraph (a) of Part 870.10, "Maximum Part of Aggregate Disposable Earnings Subject to Garnishment," repeats the statutory exemption formula of section 303(a), CCPA. Paragraph (b) applies the statutory exemption formula to the weekly pay period, or a lesser period. Paragraph (c) applies the statutory exemption formula for a period longer than one week. It states that

> [T]he weekly statutory exemption formula must be transformed to a formula applicable to such earnings providing equivalent restrictions on wage garnishment.

It proceeds to do just that. It first provides:

> (1) The 25 percent part of the formula would apply to the aggregate disposal earnings for all the workweeks compensated.

In subparagraph (2), the regulation of the Secretary computes the "multiple" for different pay periods assuming a Federal minimum wage of $1.60 per hour. For a two-week period this is $96. For a monthly period it is $208; and for a semi-monthly period it is $104.

The provisions of these regulations applicable to pay periods longer than one week are declared and determined to conform to the language and intent of section 1673(a) and its specified standards.

The restrictions of section 1673(a) are subject to two exceptions that do not detract from the generally mandatory nature of section 1673(a). Section 1673 (b) makes the restrictions of subsection (a) inapplicable to court support orders, bankruptcy court orders under Chapter XIII of the Bankruptcy Act, or to any debt due for any state or federal tax. Section 1675, previously recited, authorizes the Secretary to exempt state garnishment laws from the restrictions of section 1673(a).

Unless, pursuant to section 1675, the Secretary exempts "from the provisions of [section 1673(a)] garnishments issued under the laws of any State," sec-

tion 1673(c) governs court orders and process issued under the garnishment laws of that State. Section 1673(c) states:

> No court of the United States or any State may make, execute, or enforce any order or process in violation of this section.

The preemptive effect of this language will be tested.

■ Article VI, Clause 2 of the Federal constitution declares:

> This Constitution, and the laws of the United States which shall be made in Pursuance thereof; * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

It is this Supremacy Clause that creates and necessitates the principle of Federal preemption.

■ In an area where both the Federal and State governments can exercise concurrent power, as here, Florida Lime & Avocado Growers v. Paul, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1962) states that:

> [F]ederal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.

Congress may expressly preempt a field of concurrent power and by express provision exclude the operation of state law, see DeVeau v. Braisted, 363 U.S. 144, 156, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1959).

■ Applying the usage of the phrase "may not," supplied by Title V—General Provisions, § 503(3), Congress expressly provides that State court orders and process issued in violation of garnishment restrictions of section 1673(a) are "both unauthorized and forbidden." It is determined and declared that interlocked section 1673(a) and section 1673 (c) federally forbid the making, execution, or enforcement of any State court "order or process" that violates the restrictions on garnishment contained in section 1673(c) or any regulation of the Secretary promulgated as 29 C.F.R. § 870.10. Likewise, the effect of any State garnishment law that underlies such offending State court "order or process" is federally preempted.

Defendants, in substance, ask this court to resort to 15 U.S.C. § 1677 (1970), the anchor section of this title, to blunt the preemptive effect of sections 1673(a) and (c). Section 1677, as here applicable, declares:

> This subchapter does not annul, alter, or affect, or exempt any person from complying with, the laws of any State
>
> (1) * * * for more limited garnishments than are allowed under this subchapter, * * *.

Attorney General of Ohio William J. Brown, appearing by the same assistant attorney general who appeared on behalf of former Attorney General of Ohio Paul W. Brown, proposes this conclusion of law:

> The Ohio garnishment law is substantially similar to and is more restrictive on garnishment than the Federal statute and is therefore entitled to exemption.

Alluding to section 1677, counsel for Retail Merchants, Bass, and The Higbee Company, urge:

> (e) In summary, the Ohio laws clearly provide for "more limited garnishments than are allowed under" the federal Act in every aspect: (i) advance notice and three means to avoid garnishment completely, (ii) advance notice and fifteen days to limit the effect of garnishment by arrang-

ing budget and expenditures, (iii) a more limited number of garnishments by any one or more creditors, with consequent more limited delays in payment of wages and more limited court costs, (iv) more limited dollar amounts subject to garnishment under either the percentage of multiple of minimum hourly rate computations.

Once having forbidden the validity of any State court "order or process" that violates section 1673(a) it is unlikely that Congress in a later provision of the same law would recant that prohibition. In any event, the general language of section 1677, previously quoted, shows no congressional intention to abrogate or weaken the specific Federal preemption ordered by Congress in section 1673(c).

However, before any final judgment is made on the right of these defendants to rely on section 1677 the revised Ohio garnishment laws must be studied.

### V.

This court's preliminary injunction enjoined the Clerk of the Cleveland Municipal Court from "effectuating garnishments of personal earnings * * * except [on condition] 1. That no garnishment of personal earnings shall exceed 17½% of the disposable earnings of the debtor which are actually due, owing and payable from the garnishee at time of garnishment."

■ This authorized condition of garnishment does not violate 15 U.S.C. § 1673(a) (1970) and its prohibition against garnishment of more than 25 per cent of a person's weekly disposable earnings. However, the interpretation of Ohio Rev.Code § 1911.332 (1970), and related sections, by which this court supported its preliminary order, is criticized and challenged by defendant Attorney General and defendants Retail Merchants, Bass, and Higbee.

Before deciding whether sections 1673 (a) and (c) preempt Ohio garnishment laws, this court will first determine anew what are the permissible disposable earnings subject to garnishment under Ohio's revised garnishment laws.

Ohio Rev.Code § 1911.332 (1970) enacts a statutory formula that an employer is required to follow in determining the amount of an employee's earnings that are subject to garnishment and that must be paid into court. In Section B, entitled "Answer of Employer (Garnishee)" this statutory formula is set forth above on page 6.

As previously seen, this statutory formula requires the garnishment of 17½ percent of the defendant's disposable earnings (if it is the least of three alternate sums set forth in paragraph 6 of the form),

> for the previous monthly pay period (if the defendant has not been employed a full month, enter the amount of monthly pay at present pay rate). * * *

Arithmetic will demonstrate that this statutory formula, operating alone, results in the garnishment of 70 percent of an employee's disposable earnings paid on a weekly basis, even though on a monthly basis the garnished disposable earnings are the maximum of 17½ percent allowed by Ohio Rev.Code § 1911.-332 (1970).

Contained in Ohio Rev.Code § 1911.-332 (1970) the statutory formula by which an employer computes the portion of an employee's disposable earnings that is subject to garnishment and to be paid into court, is one of the newly enacted sections of Ohio's revised garnishment laws. It is a procedural device that converts the percentages of disposable earnings that are rendered exempt from attachment and garnishment by Ohio Rev. Code § 2329.62 (1970) and Ohio Rev. Code § 2329.66 (1970). Hence, it is these latter personal earnings exemption sections that set off and therefore ultimately determine the extent of earnings that are subject to garnishment under Ohio Rev.Code § 1911.332 (1970).

Ohio Rev.Code §§ 2329.62 (1967) and 2329.66 (1967) are amended by S.B. 85 (1970). Before 1970, as now, Ohio Rev. Code § 2329.66 defines the property of the chief support of a family that is exempt from execution and attachment; and Ohio Rev.Code § 2329.62 defines the exempt property "of every person resident of the state, not included in section 2329.66 * * *."

Before 1970, paragraph (C) of Ohio Rev.Code § 2329.62 (1967) exempted

Personal earnings of the debtor for services rendered within thirty days before the issuing of an attachment or other process, the rendition of a judgment, or the making of an order, under which the attempt may be made to subject such earnings to the payment of a debt, damage, fine, or amercement, in an amount up to but not in excess of two hundred dollars.

Before 1970, paragraph (F) of Ohio Rev.Code § 2329.66 (1967) provided different earnings exemptions. Applicable to a debtor paid weekly, subparagraph (1) exempted:

[T]hirty percent of the average weekly earnings of the debtor for personal services rendered for the four week period before the issuing of an attachment or other process * * *."

Subparagraph (2), applicable to a debtor paid bi-weekly or semi-monthly, exempted:

[S]ixty-five percent of the average biweekly or semi-monthly earnings, * * * of the debtor for personal services rendered for the two pay periods before the issuing of an attachment or other process * * *.

Subparagraph (3), applied to the debtor paid monthly, exempted:

[E]ighty-two and one-half percent of the personal earnings of the debtor for the services rendered the month before the issuing of an attachment or other process * * *.

These percentages applied to gross earnings. But the percentages of exemption, varying according to the length of the pay period, operated in each pay period category to subject to garnishment an equal amount of the same gross monthly earnings.

The 1970 amendments to the two property exemption sections eliminated the previous difference between them as to the amount and manner of computing exemption for personal earnings. The amendment to section 2329.62 (1970) preserves all of paragraph (C) (1967), *supra*, other than the $200 figure. With the addition of the word "personal" before the word "earnings" the same language is repeated as the first paragraph of paragraph (G) in amended section 2329.66 (1970). Twin use of paragraph (C) (1967) in each amended section signifies a definite intent to treat as a unit, for the purpose of exemption, earnings for the entire 30 days prior to garnishment. Conversely, Ohio Rev.Code § 1911.332 (1970), to be read in tandem with sections 2329.62 and 2329.66, subjects to garnishment personal earnings of the debtor for services rendered within 30 days before the issuing of an attachment or other process.

Under section 2329.62(C) and section 2329.66(G) the "earnings of the debtor for services rendered within thirty days" that are exempt from execution or attachment are equal to the greater of the amounts set forth in the following subparagraphs:

(1) One hundred seventy-five times the minimum hourly wage in effect at the time the earnings are payable, [the present product is $280] * * *.

(2) Eighty-two and one-half per cent of the debtor's disposable earnings payable from a garnishee, or, when the exemption is claimed by the debtor pursuant to a proceeding in bankruptcy, eighty-two and one-half per cent of the debtor's gross earnings for the thirty-day period ending on the tenth day prior to filing the petition in bankruptcy.

■ The percentage of 82½ percent, applicable to monthly earnings under paragraph (F) of section 2329.66 (1967) before the 1970 amendment, has been retained in subparagraph (2) above. This carry-over itself signifies an intent to make 82½ percent, as it was before 1970, apply to the earnings for services rendered during the previous month (30-day period). The partial phrase "payable from a garnishee" is part of the new matter of subparagraph (2). Counsel for the plaintiffs urge that this partial phrase connotes earnings payable from the garnishee at that time; that is, earnings actually then due, owing, and payable. However, the complete phrase is "the debtor's disposable earnings payable from a garnishee."

The word "earnings" as used in this complete phrase in (C) (1) and (G) (1) (1970) reasonably must mean the same as the word "earnings" in the first paragraph of paragraph (C) and paragraph (G). Defining the whole phrase, a "debtor's disposable earnings payable from a garnishee" are the debtor's earnings, after deductions required by law, for services rendered within 30 days before the issuing of the garnishment order.

It is concluded that the exemption in identical subparagraphs, section 2329.62 (C) (1) (1970) and section 2329.66(G) (1) (1970) is 82½ percent of the disposable earnings of the debtor for services rendered within 30 days before the issuing of the garnishment order and that are payable from the garnishee.

Based on this interpretation of section 2329.62(C) (1) (1970) and section 2329.-66(G) (1) (1970), it is determined and declared that line 4 of Section B, "Answer of Employer (Garnishee)" of section 1911.332 (1970), if unaffected by 15 U.S.C. §§ 1673(a) and (c) (1970), requires the employer to enter in his answer the disposable earnings of the employee for the 30-day period prior to issuance of the order and notice of garnishment.

This foregoing analysis of Ohio Rev. Code §§ 1911.332, 2329.62, and 2329.66 (1970), arrived at since the merits hearing of February 26, 1971, overturns this court's conclusion of September 25, 1970, that

[T]hose disposable earnings that shall be subject to garnishment shall refer to actual earnings due and owing an employee at the time of garnishment.

## VI.

It is determined and declared that Ohio Rev.Code § 1911.332 (1970), as enacted, requires an employer to withhold for the payment of an employee's judgment debt and to pay into court a portion of an employee's disposable earnings for that week that represents 17½ percent of the employee's total earnings for the previous 30 days. The Federal preemption question now must be squarely met. Does Ohio Rev.Code § 1911.332 (1970) require an Ohio court to violate 15 U.S.C. § 1673(a) (1970) and its maximum of 25 percent of an employee's disposable earnings for that week? Or, as new party defendants urge, can Ohio Rev.Code § 1911.332 (1970) be upheld under 15 U. S.C. § 1677 (1970) as a provision "for more limited garnishments than are allowed under this title?"

It is essential that the application of the exemption provisions of the State and Federal laws be compared. As to an employee paid once a month the amount of his disposable monthly earnings subject to garnishment by withholding therefrom the State maximum of 17½ percent is obviously smaller than the amount subject to garnishment if the Federal maximum of 25 percent is withheld from total monthly disposable earnings. It is a different story as to persons working on a weekly or semi-monthly basis. In each case when the State maximum percentage of disposable earnings subject to garnishment is deducted from the total of disposable earnings for the 30-day period preceding the issuance of the garnishment order, more than the

Federal maximum of 25 percent of the weekly disposable earnings is taken. Use of a table will illustrate.

| | Lesser of | | Lesser of | |
|---|---|---|---|---|
| | 15 U.S.C. § 1673(a) 25% | 30 or times $1.60 | O.R.C. § 1911.332 17½% | 175 or times $1.60 |
| A $440 Monthly | $110 | $208 | $77 | $280 |
| B $220 Semi-Monthly | $ 55 | $ 96 | $77 | — |
| C $100 Weekly | $ 25 | $ 48 | $77 | — |

Assume three different wage earners who all receive the same total monthly disposable earnings of $440. C is paid $100 a week, B is paid $220 semi-monthly, and A is paid $440 a month. The table visualizes disposable earnings subject to garnishment for A, B, and C under the maximum provided by 15 U.S.C. § 1673 (a) (1970); that is, 25 percent or $48 per week or its multiples, and the 17½ percent State maximum provided by Ohio Rev.Code § 1911.332 (1970).

■ It is evident that at every level except the monthly pay period more than 25 percent of the disposable earnings of the respective pay period is withheld from the disposable earnings for that period when the State exemption formula is applied. As to the person paid on a weekly, bi-weekly, or semi-monthly basis such a result is expressly forbidden and preempted by 15 U.S.C. §§ 1673(a) and (c) (1970). These specific Federal preemptions, complete and indivisible as to these classes of employees, cannot be canceled out by counterbalancing the more restrictive State garnishment exemption provided for the class of employees paid on a monthly basis.

As the table shows, the Ohio statutory exemption subjects to garnishment the same amount of disposable earnings as to all employees, working different pay periods, but with the same total monthly disposable earnings. This equality of garnishment as it affects comparable classes of employees is produced by Ohio Rev.Code §§ 2329.62(C) (1) and 2329.66 (G) (1) (1970). The same equality obtained between classes of employees working different pay periods under section 2329.66(F) (1967)—before the 1970 revision. Nevertheless, under S.B. 85 equality in treatment of classes of employees remains relative. If § 1911.332 (1970) is applied as written, i. e. the parenthetic matter in line 4 of the "Answer of Employer (Garnishee)," on the basis of a hypothetical projection of a month's pay of an employee working less than the full month, the garnishee would be required to take from the employee's pay check 17½ percent of the projected full month's disposable earnings. This would be required even though the employee may only have earned one week's pay during the preceding 30 days.

■ After considering the total application of the comparable statutory exemptions of the State and Federal laws, it is concluded that the Ohio garnishment exemptions do not provide "for more limited garnishments than are allowed under this title," essential if a State law is to be saved under 15 U.S.C. § 1677 (1970). Furthermore, it is determined as a matter of law that the express preemption of sections 1673(a) and (c) directly applies to garnishments of the disposable earnings of Ohio employees paid on a weekly, bi-weekly, or semi-monthly basis. This specific exemption cannot be superseded by the gross preemption clause of 15 U.S.C. § 1677 (1970).

■ Conversely, the Secretary urges that 15 U.S.C. § 1677 (1970) operates so as to enforce the Ohio maximum percentage of 17½ percent of disposable earnings as to persons paid once a month. This would force an unwanted marriage between Ohio's 17½ percent maximum as to monthly pay periods and the Federal maximum of 25 percent as to weekly, bi-weekly, or semi-monthly pay periods. It has been determined that the Federal maximum of 25 percent of disposable weekly earnings preempts the

State exemption percentage as to weekly, bi-weekly, and semi-monthly pay periods. To maintain uniformity of the percentage exemption as to all pay periods the Federal maximum of 25 percent will also be applied to preempt the State percentage exemption as to monthly pay periods.

## VII.

█ In his final proposed conclusion of law the Attorney General states that there should be no "merger or 'dovetailing' of the two statutes." He comments:

> This office, of course, believes that this Court should uphold *in toto* the Ohio Statute. However, it is our feeling that merger is to be avoided and that the Ohio Garnishment Law, if not valid in its entirety should be invalidated.

Exemplifying this position all new party defendants ask this court to extend Federal preemption to Ohio's limitation of one garnishment a month per defendant (Ohio Rev.Code §§ 1911.33(B) and 2715.11(B) (1970)). It is claimed that the second preemption must follow any first preemption. In substance it is contended that the Ohio limitation of one garnishment a month per defendant is indivisibly connected with Ohio's statutory garnishment exemption that applies to the defendant's disposable earnings for the preceding 30 days. The limitation of one garnishment a month per defendant is characterized as the "cornerstone" of the Ohio garnishment law.

Pursuing this line of reasoning new party defendants rely upon 15 U.S.C. § 1677 (1970). It is argued that the one-a-month-garnishment Ohio law provides "for more limited garnishments" than the Federal law, since the Federal garnishment law provides no limitation on the frequency of garnishments. Weekly garnishments are, therefore, possible, it is urged, and 25 percent of disposable earnings can be taken each week with attendant costs, and increased threat of job loss. In contrast, only one garnishment is possible under Ohio law. Assuming four garnishments to one, it is

claimed that $100 could be taken through these four Federal garnishments contrasted with $77 in the one Ohio garnishment.

The plea of new party defendants, though plausible, misconceives the extent of this court's power of preemption. Colorado Anti-Discrimination Comm. v. Continental Air Lines, Inc., 372 U.S. 714, 722, 83 S.Ct. 1022, 1026, 10 L.Ed.2d 84 (1963) repeats the principle that must guide and govern this court in the present circumstances. It is there held:

> To hold that a state statute identical in purpose with a federal statute is invalid under the Supremacy Clause, we must be able to conclude that the purpose of the federal statute would to some extent be frustrated by the state statute.

It is plain that enforcement of the Federal garnishment law, silent on the subject of frequency of garnishments, is not "frustrated" by the Ohio limitation of one garnishment a month. The absence of a garnishment limitation from the Federal garnishment law should not be equated and cannot be construed as a prohibition against the Ohio provision.

Moreover, the one-a-month-garnishment provision is a separable subsection of Ohio Rev.Code §§ 1911.33 (1970) and 2715.11 (1970). Clearly, it is physically separated from the Ohio statutory exemption provisions, Ohio Rev.Code §§ 1911.332, 2329.62, and 2329.66 (1970). Likewise, philosophically it is independent from these various sections. Thus a predecessor section was separably added by the Legislature in 1967 as section 2329.66(H).

█ The Ohio garnishment laws, the product of S.B. 85's monumental revision, comprehensively provide for garnishment actions in all Ohio courts, establish substantive protections for the judgment debtor, while detailing and regulating the procedural steps that a judgment creditor may take to collect his judgment by subjecting the debtor's personal earnings to garnishment proceedings. In contrast, the Federal garnish-

ment law provides only two substantive restrictions on garnishment, and it is completely lacking as to procedural regulation of garnishments. Section 1673(a) fixes the previously discussed maximum aggregate disposable earnings that are subject to garnishment. Section 1674 makes it a misdemeanor to "discharge any employee by reason of the fact that his earnings have been subjected to garnishment for any one indebtedness." It is evident, and it is determined, that none of the provisions of the Ohio garnishment laws, omitted from the Federal garnishment law, frustrate the effect of the foregoing two substantive restrictions of the Federal law.

■ The preemptive effect of sections 1673(a) and (c) has already been determined. Preemption of Ohio Rev. Code § 2715.01 (last paragraph) by 15 U.S.C. § 1674 is also claimed by the Secretary. This claim of preemption does not involve sections 1673(a) and (c). Rather, this claim must depend on the principle of implied preemption. In the words of *Florida Lime & Avocado Growers, supra,* "the nature of the regulated subject matter permits no other conclusion."

Ohio Rev.Code § 2715.01 (1970) (last paragraph) provides:

> No person shall discharge an employee solely by reason of such employee's personal earnings from such person having been attached through no more than one action in garnishment in any twelve-month period.

This section, contrary to 15 U.S.C. § 1674 (1970), is not a criminal section, and it contains no sanction to enforce it. Applying *Colorado Anti-Discrimination Comm. supra,* only if section 1674 "would to some extent be frustrated by" Ohio Rev.Code § 2715.01 (1970) could any question of Federal preemption arise. On the record of this case there is no showing that 15 U.S.C. § 1674, a self-enforcing criminal section, is being frustrated by the existence of Ohio Rev.Code § 2715.01 (1970). Moreover, this record discloses no justiciable controversy in-

volving 15 U.S.C. § 1674 (1970) as to which this court should invoke or enforce its jurisdiction in declaratory judgment proceedings.

Upon the entire record and in accordance with the determinations and declarations heretofore made, it is specifically determined and declared that Ohio Rev. Code § 1911.332 (1970) as to lines 4, 5, and 6 of Section B, "Answer of Employer (Garnishee)," Ohio Rev.Code § 2715.-112 (1970), insofar as it incorporates Ohio Rev.Code § 1911.332 (1970) and lines 2, 3, and 4 of "Payment to Avoid Garnishment" of Ohio Rev.Code § 2715.-02 (1970), are expressly preempted by 15 U.S.C. §§ 1673(a) and (c) (1970). Consequently, defendants Cleveland Municipal Court and Helen J. Lyons, Clerk of Court, are forbidden and preempted from making, executing, or enforcing any order or process that is based upon lines 4, 5, and 6 of Section B, "Answer of Employer (Garnishee)" of Ohio Rev. Code § 1911.332 (1970).

· ■ Upon the record it is determined and concluded that irreparable damage will result to the individual plaintiffs, to other judgment debtors, and to the Secretary of Labor, charged with the enforcement of the Federal garnishment law by 15 U.S.C. § 1676 (1970), unless defendants Cleveland Municipal Court and Helen J. Lyons, Clerk of Court, and her successors, are permanently enjoined in accordance with the previous determinations and declarations.

■ In its "interlocutory memorandum and order" of September 25, 1970, this court attempted to heed the desire of the Ohio General Assembly (expressed in Ohio Rev.Code § 2329.621 (1970)) that "all the laws of this state affecting such garnishments" should be construed so as to effect the legislative purpose of "enacting garnishment laws which provide protection to debtors which equals or exceeds that contained in the federal law." For the reasons stated herein, and in the respects indicated, it is reluctantly but finally concluded that the genuine and

laudable purpose of the Ohio General Assembly cannot be accomplished, given the content of Ohio Rev.Code §§ 1911.332 (and related sections), 2329.62(C) (1), and 2329.66(G) (1) (1970), insofar as these sections conflict with 15 U.S.C. §§ 1673(a) and (c) (1970).

### VIII.

In accordance with Rule 52, Federal Rules of Civil Procedure the findings and conclusions set forth in the determinations, declarations, and conclusions of this opinion shall constitute the findings of fact and separate conclusions of law of this court.

### ORDER

In conformity with and in order to carry out the findings and conclusions set forth in the determinations, declarations, and conclusions of this court's Memorandum of March 19, 1971, and in accordance with sections 301–307 of CCPA (15 U.S.C. §§ 1671–1677) (1968), as herein construed,

It is ordered as follows, said order to take effect on May 20, 1971:

A. Defendants Cleveland Municipal Court and Helen J. Lyons, Clerk of Courts, and her successors, are permanently enjoined from making, executing, or enforcing any order or process that is based upon lines 3, 4, 5, and 6 of Section B, "Answer of Employer (Garnishee)" of Ohio Revised Code § 1911.332 (1970).

B. Defendants Cleveland Municipal Court and Helen J. Lyons, Clerk of Courts, and her successors, shall require in all garnishment proceedings a form of "Affidavit and Order and Notice of Garnishment and Answer of Employer" in which the following lines 3, 4, and 5 shall be substituted in place of lines 3, 4, 5, and 6 as presently set forth in Section B of the form prescribed in Ohio Revised Code § 1911.332 (1970).

C. It is ordered that the debtor statutory demand specified by Ohio Revised Code § 2715.02 (1970), as to lines 1, 2, 3, and 4 thereof, shall be replaced by the following lines 3, 4, and 5:

3. Enter on line 3 all disposable earnings defined in Section 302(b), CCPA (15 U.S.C., § 1672(b) (1968) and Ohio Revised Code § 2329.621 (1970) payable, or accrued, to the defendant (employee) for any pay period at the time of your receipt of this Order and Notice of Garnishment. If disposable earnings are payable, or accrued, for more than one pay period, make a separate entry for each pay period showing the amount of disposable earnings and the time periods that these amounts represent.

$————— —————
Present pay          Time period in-
  period                volved
$————— —————
Previous pay         Time period in-
  period                volved

4. Enter on line below the smaller:
   25% of whatever amount or amounts have been entered on line 3, or the difference between each amount on line 3 the following computations:

   $48 if the time involved is 1 week or less.

   $68.38 if the time involved is greater than 1 week of a 10-day pay period.

   $96 if the time involved is greater than 1 week of a bi-weekly pay period.

   $104 if the time involved is greater than 2 weeks of a semi-monthly pay period.

   $208 if the time involved is greater than ½ month of a monthly pay period.

   $————— $—————
   Present pay       Previous pay
     period             period

5. Extend to line 5 the total of the entries made on line 4. Pay said total amount into court when re-

turning this form. However, in no event shall the amount paid into court exceed the amount on line C of Section A of this form.

$——————

I certify that the statements above are true.

| Print name of employer | Print name and title of person who completed form |

Dated this ——— day of ———, 19—.

Signature of person completing form

The foregoing Order of this court is subject to the further order of this court.

It is so ordered.