James D. HODGSON, Secretary of Labor,
Plaintiff,

v.

HAMILTON MUNICIPAL COURT et al.,
Defendants.

No. 7954.

United States District Court,
S. D. Ohio, W. D.

July 31, 1972.

Gregory B. Taylor, Dept. of Labor, Cleveland, Ohio, for plaintiff.

John T. Willard, City Pros., Hamilton, Ohio, for defendants Hamilton Municipal Court, Richard W. Berridge and John T. Willard.

Gordon J. Wedig, Asst. City Sol., Cincinnati, Ohio, for defendants Hamilton County Municipal Court, all Judges and Clerk.

Robert R. Lowery, Cincinnati, Ohio, for amicus curiae Cincinnati Bar Assn.

Donald R. Stacey, Cincinnati, Ohio, for amicus curiae Cincinnati Legal Aid Society.

Daniel P. Carmichael, Cincinnati, Ohio, for amicus curiae Central Trust Co.

Charles S. Rawlings, Asst. Atty. Gen., Columbus, Ohio, for additional defendant, Atty. Gen., State of Ohio.

## OPINION AND ORDER

PORTER, District Judge.

This case has been considered by this Court on the merits of plaintiff's request for a declaratory judgment and a permanent injunction. It was submitted upon the pleadings, evidence, and briefs, the parties having waived final hearing. The Court makes the following findings of fact and conclusions of law and directs the entry of the following final order:

## FINDINGS OF FACT

1. On March 19, 1971, a decision was rendered by the United States District Court for the Northern District of Ohio (Thomas, J.) holding that certain portions of the Ohio garnishment statutes were preempted by the restrictions set forth in Title III of the Consumer Credit Protection Act (15 U.S.C. §§ 1671–77), and enjoining the Cleveland Municipal Court, its judges and clerk of court, from continuing to require and use forms for the processing of garnishments in violation of the federal restrictions. Hodgson v. Cleveland Municipal Court, D.C., 326 F.Supp. 419.

2. On or about April 19, 1971, defendant Richard W. Berridge, Judge of Hamilton Municipal Court, sent a form letter to numerous business firms in Hamilton, Ohio, advising that his court intended to continue to process garnishments in accordance with the standards prescribed in the Ohio statutes rather than the federally prescribed standards of the Consumer Credit Protection Act.

3. On May 4, 1971, the plaintiff Secretary of Labor filed this action against defendants Hamilton Municipal Court, Judge Berridge and John T. Willard, Clerk of Court, seeking a declaration that the Ohio statutory garnishment provisions enforced by defendants were in violation of the federal Act, and a preliminary and permanent injunction against further violation of the Act by these defendants.

4. On May 10, 1971, the plaintiff amended his complaint, under the provisions of Rule 15(a), F.R.Civ.P., to include the Hamilton County Municipal Court, its judges and clerk of court, as additional parties defendant. The basis for this amendment was information received by the Regional Attorney, United States Department of Labor, indicating that certain judges of that Court were continuing to observe the Ohio statutory garnishment standards rather than those mandated by the Consumer Credit Protection Act.

5. On September 23, 1971, following a hearing on plaintiff's prayer for a preliminary injunction, this Court issued an order preliminarily enjoining the Hamilton Municipal Court, its judge and clerk, from continued adherence to the Ohio statutory garnishment standards, and requiring the use of forms of "Affidavit and Order and Notice of Garnishment and Answer of Employer" such as those ordered in the *Cleveland Municipal Court* decision (326 F.Supp., at 438).

6. Until temporarily enjoined by this Court, the forms for processing of garnishments used by defendants, Hamilton Municipal Court, its judge and clerk, conformed to § 1911.332, Ohio Revised Code, and thereby authorized the garnishment, in the case of a one-week pay period, of at least 70% of one week's disposable earnings, that being equivalent to $17\frac{1}{2}\%$ of the earnings for a prior month. Said Hamilton Municipal Court, its judge and clerk, now say they have always been and are now willing to comply with the federal law as declared by this Court or the higher federal courts. From this we infer that the Judge of the Hamilton Municipal Court has abandoned earlier statements to the effect that regardless of what this Court decided, he was going to let creditors file garnishment proceedings once a week. (See defendant's final trial brief, page 4.)

7. On July 15, 1970, the Governor of Ohio made application to the United States Department of Labor for an exemption for the garnishment laws of Ohio from the requirements of § 303(a) [1] of the Consumer Credit Protection Act, which restrict the amounts which state or federal courts may permit to be garnished from personal earnings of debtors. This application was made pursuant to § 305 [2] of the Consumer Credit Protection Act which authorizes the Secretary of Labor to exempt from the restrictions of § 303(a) the garnishment laws of any State where he determines that such laws provide restrictions on garnishment substantially similar to those provided in § 303(a).

8. On November 25, 1970, the Secretary of Labor, acting through his duly authorized delegate, Robert D. Moran, Administrator of the Wage and Hour Division, denied the application of the State of Ohio, principally on the ground that certain provisions of Ohio garnishment law do not provide restrictions substantially similar to those in 15 U.S. C. § 1673(a).

9. As determined in the Area Wage Surveys of the Bureau of Labor Statistics for Ohio metropolitan areas, BLS Bulletin 1625–90, Table B–17, the following table represents for the Standard Metropolitan Areas in Ohio the "percent distribution of plant and office workers by frequency of wage payment, July 1968 through July 1969."

Table B–17.   Frequency of Wage Payment—All Industries

| | PLANT WORKERS | | | | | OFFICE WORKERS | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Metropolitan Area | Wkly. | Bi-wkly. | Semi-Mthly. | Mthly. | Other freq. | Wkly. | Bi-wkly. | Semi-mthly. | Mthly. | Other freq. |
| Akron | 91 | 8 | 1 | – | – | 13 | 17 | 70 | (2) | – |
| Cincinnati | 96 | 3 | 1 | – | – | 58 | 25 | 18 | – | – |
| Cleveland | 66 | 31 | 3 | – | (2) | 18 | 41 | 38 | 1 | – |
| Columbus | 86 | 12 | 1 | 1 | – | 31 | 23 | 28 | 15 | 3 |
| Dayton | 98 | 2 | (2) | – | – | 59 | 14 | 26 | 1 | – |
| Toledo | 92 | 7 | (2) | – | – | 24 | 30 | 46 | – | – |

(2) Less than 0.5 percent

1. Pub.L. 90–321, Title III, § 303, May 29, 1968, 82 Stat. 163 (15 U.S.C. § 1673).

2. Pub.L. 90–321, Title III, § 305, May 29, 1968, 82 Stat. 164 (15 U.S.C. § 1675).

CONCLUSIONS OF LAW

1. Jurisdiction of this action is conferred upon this Court by 28 U.S.C. §§ 1331, 1334 and 1337. Under 28 U.S.C. § 1331, the Court has original jurisdiction of all civil actions where the matter in controversy exceeds $10,000 and arises under the Constitution, laws or treaties of the United States. This case arises under Article I, § 8, Cl. 3, Regulation of Commerce, and Cl. 4, Bankruptcy, U.S. Constitution. It also arises under a federal statute (15 U.S.C. §§ 1671–77, Consumer Credit Protection Act). The total garnishments processed annually in the Hamilton Municipal Court involve a sum exceeding $10,000.

2. Under 28 U.S.C. § 1334, the Court has original jurisdiction of all matters and proceedings in bankruptcy. One of the congressional findings set forth in the Consumer Credit Protection Act is that great disparities in state garnishment laws have "destroyed the uniformity of the bankruptcy laws" (15 U.S.C. § 1671(a)(3)); see Hodgson v. Cleveland Municipal Court, *supra*, at 423.

3. Under 28 U.S.C. § 1337, the Court has original jurisdiction of cases arising under laws regulating interstate commerce. The Consumer Credit Protection Act is such a law.

4. Under 28 U.S.C. § 2201 the Court has power to grant a declaratory judgment.

5. The restrictions on garnishment contained in Title III of the Consumer Credit Protection Act (15 U.S.C. §§ 1671–77) are predicated on the powers granted the Congress in Article I, § 8 of the Constitution to regulate commerce and to establish uniform bankruptcy laws and become effective to supersede state laws in conflict therewith by virtue of the Supremacy Clause in Article VI of the Constitution.

6. In enacting the federal garnishment restrictions Congress made the following findings (15 U.S.C. § 1671):

"(a) The Congress finds:

" (1) The unrestricted garnishment of compensation due for personal services encourages the making of predatory extensions of credit. Such extensions of credit divert money into excessive credit payments and thereby hinder the production and flow of goods in interstate commerce.

"(2) The application of garnishment as a creditors' remedy frequently results in loss of employment by the debtor, and the resulting disruption of employment, production, and consumption constitutes a substantial burden on interstate commerce.

"(3) The great disparities among the laws of the several States relating to garnishment have, in effect, destroyed the uniformity of the bankruptcy laws and frustrated the purposes thereof in many areas of the country.

\* \* \* \* \* \*

"(b) On the basis of the findings stated in subsection (a) of this section, the Congress determines that the provisions of this subchapter are necessary and proper for the purpose of carrying into execution the powers of the Congress to regulate commerce and to establish uniform bankruptcy laws."

These findings were based on evidence placed before Congress during extensive hearings by a number of committees in both Houses of Congress and in the course of the debates preceding the enactment of the Consumer Credit Protection Act.[3]

---

3. A report of the Banking and Currency Committee refers to the many hours of testimony, the hundreds of pages of discussion and data concerning the effects of garnishment upon commerce and upon personal bankruptcies. It concluded, "There is no constitutional barrier to the Congress establishing a national standard for the garnishment of wages." (Cong.Record—House, page 11697.)

Congresswoman Sullivan, Chairman of the House Subcommittee on Consumer Affairs, refers to the extensive evidence before her committee concerning the effects

The findings of Congress as stated in § 301 of the Consumer Credit Protection Act (15 U.S.C. § 1671) have a rational basis. That being so, they are accepted by the Courts. United States v. Gainey, 380 U.S. 63, 66–68, 85 S.Ct. 754, 13 L. Ed.2d 658 (1965); Katzenbach v. McClung, 379 U.S. 294, 303–304, 85 S.Ct. 377, 13 L.Ed.2d 290; Tot v. United States, 319 U.S. 463, 466, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943); Hodgson v. Cleveland Municipal Court, *supra*, at 429 (1971).

The Supreme Court said in Katzenbach v. McClung, *supra*, that such congressional findings must be accorded considerable weight in determining the constitutionality of the statute involved. There the Court said, at pages 303–304, 85 S.Ct. at page 383:

"Of course, the mere fact that Congress has said when particular activity shall be deemed to affect commerce does not preclude further examination by this Court. But where we find that the legislators, in light of the facts and testimony before them, have a rational basis for finding a chosen regulatory scheme necessary to the protection of commerce, our investigation is at an end."

In determining whether there is such rational basis, the Supreme Court said in Maryland v. Wirtz, 392 U.S. 183, 190, n. 13, 88 S.Ct. 2017, 2021, 20 L.Ed.2d 1020, that it was "not concerned with the manner in which Congress reached its factual conclusions," and it is sufficient if Congress acted on the basis of "common experience . . . [and]

of garnishment upon commerce and upon bankruptcies, and quotes from a letter to her committee from Mr. H. C. Lumb, Vice President of Republic Steel Co., Cleveland, Ohio, dated November 22, 1967 in which Mr. Lumb refers to the disruptive effects of garnishment practices upon their employees, the impairment of their efficiency, the need frequently to discharge them because of the heavy administrative burdens. He concludes his testimony by saying, "It is our belief that the prohibition of garnishment laws would remove a burden on interstate commerce." (Cong.Record—House, Feb. 1, 1968, page 11694.)

A report of the House Banking and Currency Committee stated: "Evidence received by your committee clearly establishes the connection between the rocketing increases in personal bankruptcies and harsh garnishment laws. Since 1950, personal bankruptcies in this country have risen by over 1,000 percent—from 18,000 in 1950 to 208,000 for the fiscal year ending June 30, 1967. Well over $1 billion in consumer debts were cancelled by virtue of these personal bankruptcies in 1967 alone." (Cong.Rec.—House, 1/30/68, page 11502.)

Rep. Minish, one of the sponsors of the House bill, stated, "During hearings on H.R. 11601, the committee heard testimony accompanied by supporting evidence that clearly established a cause-and-effect relationship between harsh garnishment laws and high levels of personal bankruptcies." (Cong.Rec.—House, 1/30/68, p. 11511.) Cong. Gonzalez re-

ferred to testimony of five federal Referees in Bankruptcy who testified before the Banking and Currency Committee that "Garnishment frequently triggers bankruptcy, somewhere between 80 and 60 percent of the time." He continues: *"Ohio, with about the same population as Texas, has nearly 50 times more bankruptcies. Ohio permits garnishment; Texas does not.* Tennessee, with population and other similarities to North Carolina, has over 25 times more bankruptcies. Tennessee until last year permitted almost total garnishment; North Carolina does not. California with a slightly larger population than New York, has five times more bankruptcies. California permits garnishment of up to 50 percent of a worker's wage; New York has a law similar to title II." (Cong.Rec.—House, 2/1/68, p. 11690). Congresswoman Sullivan stated: "In California—the personal bankruptcy capital—our hearings show, on page 1124. that this tool is used almost exclusively by collection agencies, professional bill collectors. We can talk States' rights all we like, but these garnishments flow across State lines and follow, and sometimes hound, a man to his grave." *Ohio, in 1966, was second (after California) in total bankruptcies. In that year it was one of six states which, with only 26 percent of the country's population, accounted for 52 percent of all bankruptcies in this country.* (FOCUS, Vol. 1, No. 2, 5/26/67, publ'd by Ohio AFL-CIO.) (Emphasis added.)

the circumstances of life as we know them." Tot v. United States, *supra*, at 468, 63 S.Ct. at 1245.

7. Title III, Consumer Credit Protection Act, does not offend the Due Process Clause of the Fifth Amendment by unconstitutionally impairing the obligation of contracts. The power of Congress to regulate in interstate commerce has been held by the highest Court to be plenary in scope. As said by Chief Justice Marshall in Gibbons v. Ogden, 22 U.S.(9 Wheat.) 1, 6 L.Ed. 23 (1824), at page 195:

"This power, like all others vested in congress, is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution."

It is well settled that the exercise of the commerce power may not be hampered or restricted to any extent by private contracts previously entered into. Congress may constitutionally encroach upon vested contractual interests if it does not act arbitrarily or capriciously, and adopts means reasonably suited to the accomplishment of its purposes. Louisville & Nashville R. Co. v. Mottley, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297 (1911); Norman v. Baltimore & Ohio R. Co., 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885 (1935); United States v. Biancofiori, 422 F.2d 584 (7 Cir., 1970). By analogy, the Supreme Court has held that under its power to pass uniform laws on the subject of bankruptcy, Congress may enact laws which have the direct aim and effect of relieving insolvent persons from the payment of their debts. Continental Illinois National Bank & Trust Co. v. Chicago, R. I. & P. Ry. Co., 294 U.S. 648, 680, 55 S. Ct. 595, 79 L.Ed. 1110 (1935). In other cases the courts have sustained retroactive price control laws which prevented evictions under prior state judgments (Fleming v. Rhodes, 331 U.S. 100, 67 S. Ct. 1140, 91 L.Ed. 1368 (1947)); and laws depriving the courts of jurisdiction to entertain previously-accrued Fair Labor Standards claims (Fisch v. General Motors Corp., 169 F.2d 266 (6 Cir., 1948), cert. den., 355 U.S. 902, 69 S.Ct. 405, 93 L.Ed. 436).

8. Congress clearly indicated on the face of its legislation on garnishment that it did not intend to preempt the entire field of garnishment law from the States, but limited its exercise of supremacy to two areas only: one being the maximum amount which may be garnished from the earnings of an individual from any week or other pay period which has been subjected to garnishment, as provided in §§ 303 and 302 of the Act; and the second being a prohibition against discharge of an employee by reason of the fact that his earnings have been subjected to garnishment for any one indebtedness, as Congress provided in § 304 of the Act. Beyond these two areas, Congress expressly stated in § 307 (15 U.S.C. § 1677) that Title III:

". . . does not annul, alter, or affect, or exempt any person from complying with, the laws of any State

"(1) prohibiting garnishments or providing for more limited garnishments than are allowed under this subchapter, or

"(2) prohibiting the discharge of any employee by reason of the fact that his earnings have been subjected to garnishment for more than one indebtedness."

9. Accordingly, no court of the United States or any State may make, execute, or enforce any order or process (except as provided in §§ 303(b) and 305 of the Act) which permits the garnishment of personal earnings in an amount which *exceeds* (but the amount may be less than) 25% of disposable earnings for any week which is subjected to garnishment, or 30 times the federal minimum hourly wage, whichever is less. At present, 30 times the $1.60 federal minimum wage is $48. That conclusion is mandatory upon every court of the land, State or Federal, by virtue of § 303(c) and the other provisions of §§ 303 and 302 of the Consumer Credit

Protection Act—unless a State's laws have been specifically exempted from federal garnishment standards by the Secretary of Labor under authority of § 305 of the Consumer Credit Protection Act.

10. It was the intention of Congress that any section or provision of a state law that requires a larger amount to be garnished than the federal law permits in § 303 of the Act be considered preempted by the federal law. On the other hand, a state law provision is to be applied and' will not be considered preempted, if it results in a smaller garnishment amount.

11. Defendants have urged that Ohio's garnishment laws cannot be preempted or superseded in piecemeal fashion and that the Ohio Legislature intended to avoid "the inevitable confusion which will result if any part of the federal act is superimposed on Ohio law" (Ohio Rev.Code § 2329.621 (1970)). This expressed legislative intent, however, cannot effectively deny the clear exercise by Congress of its constitutional power under Title III of the Act to regulate and preempt certain aspects of state garnishment procedure, while leaving other aspects intact.

12. Defendants point to certain salutary features of Ohio garnishment law which, in their view, are sufficient to avoid federal preemption under § 303(a) of the Consumer Credit Protection Act. Specifically, they point out that under Ohio law (Ohio Rev.Code §§ 2329.62, 2329.66) a maximum of $17\frac{1}{2}\%$ of one month's disposable earnings may be subjected to garnishment, whereas under the federal Act, as much as 25% may be garnished. They make this comparison on the basis of the assumption that a weekly wage earner's pay could be garnished four times in one month under federal law, thereby losing a total of 25% of a month's disposable earnings in garnishment.

This conclusion, however, misconstrues the scope and intent of the federal law, which is specifically geared to "any workweek" and that week's "disposable earnings" (15 U.S.C. § 1673 (a)); Hodgson v. Cleveland Municipal Court, *supra,* at 429. Congress determined that weekly wage earners especially needed protection from excessive garnishment, based on findings that the vast majority of workers are paid by the week.

13. In denying Ohio's application for exemption under § 305 of the Act, on November 25, 1970, Robert D. Moran, Administrator of the Wage and Hour Division, Department of Labor, stated in his written opinion in Matter of Application of State of Ohio for an Exemption under Section 305 of the Consumer Credit Protection Act, CCH Lab.L.Rep. ¶30,707, November 25, 1970:

". . . Section 305 does not appear to contemplate a broad jurisprudential balancing or measurement. Rather it seems to intend a measurement of only that which may be subject to tangible comparison."

The Administrator therefore concluded:

". . . [D]espite the fact that the Ohio law does generally provide broader debtor protection on a monthly basis, the clear statement of Congress in Section 303 addresses itself to restrictions on garnishment in terms of disposable earnings for any workweek or other pay period and foreclose the granting of the present application."

14. It is well settled that, in construing the meaning of a statute, a court "shows great deference to the interpretation given the statute by the officers or agency charged with its administration." Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); Griggs v. Duke Power Company, 401 U.S. 424, 434, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). The Supreme Court said, in Power Reactor Development Co. v. International Union of Electricians, 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924 (1961):

"Particularly is this respect due when the administrative practice at

stake 'involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion; of making the parts work efficiently and smoothly while they are yet untried and new.' " Quoting Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796 (1933).

██ 15. Defendants have suggested that the authority given by Congress to the Secretary of Labor, in § 305 of the Act, to exempt state garnishment laws from the restrictions of § 303(a) may constitute the unconstitutional delegation of judicial authority. But it is well established that governmental departments or agencies, vested by Congress with authority to administer and enforce legislative enactments may constitutionally determine the precise scope of their authority and the proper objects of their jurisdiction. Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 399–400, 60 S.Ct. 907, 84 L.Ed. 1263 (1940); Shields v. Utah Idaho Central R. Co., 305 U.S. 177, 59 S.Ct. 160, 83 L. Ed. 111 (1938); United States v. Jefferson County Board of Education, 372 F.2d 836, 853, 856 (5 Cir., 1966). In any event, if the Secretary's exercise of his authority to review state applications for exemption were to be held unconstitutional, the only result would be that *no* State could be exempted from the restrictions of § 303 and the stance of the present case would be in no wise affected.

██ 16. It is quite clear that the exemption formula established by Ohio Revised Code §§ 2329.62 and 2329.66 results in a garnishment of as much as 17½ percent of a prior month's actual (or projected) disposable earnings, whether the garnishment order catches earnings for one week, two weeks or an entire month. This is the operative effect of Ohio Revised Code § 1911.332 which requires the employer (garnishee) to deduct the entire monthly garnishable amount from whatever earnings are owing to the employee (debtor) at the time the garnishment order is received.

17. The net effect of Ohio Revised Code §§ 2329.62, 2329.66 and 1911.332, taken together, is thus to cause anywhere from 70% to 100% of one week's disposable earnings to be taken by garnishment, even though this can be done, under Ohio law, only once in a month's time (Ohio Revised Code § 1911.33(B)). This is in fact the precise effect of the garnishment forms heretofore used in defendants' courts as shown by the evidence introduced in this case.

18. The following table illustrates the comparative effects of Ohio garnishment law and the restrictions imposed under the federal Act on earnings for a monthly, semi-monthly and weekly pay period (assuming $100 disposable earnings per week):

|  | Lesser of | | Lesser of | |
|---|---|---|---|---|
|  | 15 U.S.C. §1673(a) or 25% | .30 or times $1.60 | O.R.C. §1911.332 or 17½% | 175 times $1.60 |
| A $440 Monthly | $110 | $208 | $ 77 | $280 |
| B $220 Semi-Monthly | $ 55 | $ 96 | $ 77 | -- |
| C $100 Weekly | $ 25 | $ 48 | $ 77 | -- |

19. It is thus clear that Ohio's exemption formula, when applied to pay periods of less than a month, is in violation of federal standards and must be to that extent preempted by § 303(a) of the Consumer Credit Protection Act.

20. Defendants and *amici curiae* have suggested that it is possible to construe Ohio law in such a way as to avoid garnishment of more than 25% of any week's disposable earnings, by the device of imposing a species of continuing lien on earnings until a total of 17½% of a prior month's earnings has been accrued. Without passing on this question it is

enough to conclude that in fact and in practice the provisions of Ohio Revised Code § 1911.332 can and do result in the excessive garnishments complained of in this action. The evidence before the Court of practices in the Hamilton Municipal Court establishes this to be so.

21. Nor does it follow that, as defendants assert, federal preemption of Ohio's statutory garnishment formula will result in nullifying §§ 1911.33(B) or 2715.11(B) of the Ohio Revised Code which presently permit only one garnishment per month to be filed. As Judge Thomas observed in the *Cleveland Municipal Court* case, *supra*, at 436:

> "[T]he one-a-month-garnishment provision is a separable subsection of Ohio Rev. Code §§ 1911.33 (1970) and 2715.11 (1970). Clearly, it is physically separated from the Ohio statutory exemption provisions, Ohio Rev. Code §§ 1911.332, 2329.62, and 2329.66 (1970). Likewise, philosophically it is independent from these various sections. Thus a predecessor section was separably added by the Legislature in 1967 as section 2329.66(H)."

We conclude there is a justiciable controversy as to whether or not the once-a-month garnishment provisions (Ohio Revised Code §§ 1911.33 (1970) and 2715.11 (1970)) frustrate federal law.

We further conclude, that the bare question of whether a state law is or is not preempted by a federal law is one for the federal courts to decide. In other words, the question of whether or not federal law is "frustrated" by a state statute is one for the federal and not the state courts.

Certain of the defendants earnestly maintain that such determination must be made by state courts and that this Court cannot properly concern itself with this question. Thus they say the Hamilton Municipal Court can and will permit garnishments every week instead of once every thirty days.

From this it is clear that if state courts have the right to make the determination as to whether or not a state statute is preempted, the result will be a "frustration" of the purpose of the federal statute. That is why this Court wants it abundantly clear, if it is not already that way, that we reject this contention and conclude, as a matter of federal law, that the once-a-month garnishment sections, Ohio Revised Code § 1911.33 and § 2715.11 were not preempted by federal law. To hold otherwise would not only pave the way for the frustration of the Consumer Credit Protection Act but the defeat of the purposes thereof. Hence, we want it clear also that this conclusion is not made in the exercise of pendent jurisdiction.

22. It has further been suggested that a merging of the federal restrictions with Ohio's once-per-month rule will result in gross and possibly unconstitutional inequality as between the protection afforded weekly-paid wage earners and that afforded to wage earners paid on a bi-weekly, semi-monthly or monthly basis. It must be remembered, however, that wage garnishment tends to operate on a fortuitous basis. The seeming disparity works a harsh result only where the debtor's wages are garnished relatively late in his pay period. At other times, he will have the special protection of the dollar exemptions provided by § 303(a) of the Act, which are amplified to cover pay periods greater than a week by the Secretary's regulation, 29 C.F.R. § 870.10(b). For example, a monthly-paid employee will have all earnings up to $208 exempt from garnishment, irrespective of what amounts are owing to the employee at the time the garnishment order is received.

23. In terms of constitutional law it is clear that absolute equality is not mandated by the Fourteenth Amendment. In the recent case of Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970), the Supreme Court said:

> "In the area of economics and social welfare, a State does not violate the

Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78 [, 31 S. Ct. 337, 340, 55 L.Ed. 369]. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69–70 [, 33 S.Ct. 441, 443, 57 L.Ed. 730]. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' McGowan v. Maryland, 366 U.S. 426 [, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393]."

■■ 24. We adopt Judge Thomas' conclusion that the express preemption of § 1673(a) and (c) applies directly to garnishments of the disposable earnings of Ohio employees paid on a weekly, bi-weekly, or semi-monthly basis. The specific exemption cannot be superseded by the gross preemption clause of 15 U.S.C. § 1677 (1970).

■ We also adopt Judge Thomas' conclusion that 15 U.S.C. § 1677 (1970) does not operate so as to enforce the Ohio maximum percentage of 17½% of disposable earnings on persons paid once a month.

"This would force an unwanted marriage between Ohio's 17½ percent maximum as to monthly pay periods and the Federal maximum of 25 percent as to weekly, bi-weekly, or semi-monthly pay periods. It has been determined that the Federal maximum of 25 percent of disposable weekly earnings preempts the State exemption percentage as to weekly, bi-weekly, and semi-monthly pay periods. To maintain uniformity of the percentage exemption as to all pay periods the Federal maximum of 25 percent will

also be applied to preempt the State percentage exemption as to monthly pay periods." Hodgson v. Cleveland Municipal Court, *supra*, at 435–436.

The Secretary filed a motion to modify the Court's order in Hodgson v. Cleveland Municipal Court, *supra*, in order that it might conform with the Secretary of Labor's regulations defining the meaning of "pay period."

This motion was denied. In the case before this Court the Secretary has urged the Court to conclude that the Secretary's definition of "pay period" is the correct one and in those instances where the application of Ohio statutory formulae results in a lesser garnishment, federal law requires that the latter should be applied rather than the restrictions of § 303(a) Consumer Credit Protection Act (15 U.S.C. § 1673(a)). We reject this and instead follow the law as declared by Judge Thomas.

■ 25. The Court further concludes that by virtue of the substance as well as the spirit of § 303(a), Consumer Credit Protection Act and pursuant to interpretative opinions of the Labor Department issued thereunder, garnishment procedures should never operate so as to deprive an employee of more than 25% of his disposable earnings paid for any one pay period. In Opinion Letter of Wage-Hour Administrator, February 5, 1971, CCH Lab.L.Rep. ¶30,737, the Administrator ruled that:

". . . it should be clear under State law that any employer (or garnishee) shall pay any employee (or defendant) the amount of his exempt disposable earnings on the regular pay day for the pay period in which the wages were earned."

See also Opinion Letter of Wage-Hour Administrator, July 12, 1971, CCH Lab. L.Rep. ¶30,761.

In Ohio this means that, even where the earnings of more than one pay period are subjected to garnishment, only the amount of the garnishment for one such pay period may be withheld from the wage payment for such period. The

amount of the garnishment for a period being held back will have to be withheld from the wage payment for the following period.

26. Title 15 U.S.C. § 1674 provides in part:

"No employer may discharge any employee by reason of the fact that his earnings have been subjected to garnishment for any one indebtedness."

Ohio Revised Code § 2715.01 (1970) (last paragraph) provides:

"No person shall discharge an employee solely by reason of such employee's personal earnings from such person having been attached through no more than one action in garnishment in any twelve-month period."

Judge Thomas held (and we hold) the federal law is not frustrated by § 2715.-01, Ohio Revised Code. Hodgson v. Cleveland Municipal Court, *supra*, at 436. He continued:

"Moreover, this record discloses no justiciable controversy involving 15 U.S.C. § 1674 (1970) as to which this court should invoke or enforce its jurisdiction [power] in declaratory judgment proceedings." *Id.*, at 437.

27. The Court concludes that a permanent injunction against the Hamilton Municipal Court, its Judge and Clerk, would have to issue but for the expression by said defendants of a willingness now and at all times to comply with federal law as declared herein or by higher federal courts (see main brief of said defendants, page 4). An injunction is therefore not necessary at this time in order to insure conformity with the requirements of Title III, Consumer Credit Protection Act, and the regulations of the Secretary of Labor pursuant thereto.

The Court concludes that an injunction against the Hamilton County Municipal Court, its Judges or Clerk is not necessary to insure conformity with the requirements of Title III, Consumer Credit Protection Act (15 U.S.C. §§ 1671–1677) and the regulations of the

Secretary of Labor pursuant thereto, because, through counsel, said defendants have indicated they intend to comply with the law as declared herein.

28. The Court concludes that such an injunction may properly issue from this Court notwithstanding the provisions of 28 U.S.C. § 2283 the so-called "anti-injunction" statute. This is so for two reasons:

First, the statute permits an injunction against state court proceedings where expressly authorized by Congress. It has been said that no prescribed formula is necessary to constitute such an express authorization and that an authorization need not expressly refer to § 2283. Amalgamated Clothing Workers of America v. Richman Brothers, 348 U.S. 511, 516, 75 S.Ct. 452, 99 L.Ed. 600. See also, Studebaker Corporation v. Gittlin, 360 F.2d 692, 697 (2 Cir., 1966); Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944); Porter v. Dicken, 328 U.S. 252, 66 S.Ct. 1094, 90 L.Ed. 1203 (1946), as explained by Baines v. City of Danville, 337 F.2d 579 (4 Cir., 1964); Tampa Phosphate Railroad Co. v. Seaboard Coast Line Railroad Co., 418 F.2d 387 (5 Cir., 1969). See also, NLRB v. Nash Finch Co., 404 U.S. 138, 144–145, 92 S.Ct. 373, 30 L. Ed.2d 328 (1971); Mitchum v. Foster, 407 U.S. 225, 235–237, 92 S.Ct. 2151, 2158–2159, 32 L.Ed.2d 705 (1972).

Title III, Consumer Credit Protection Act, 15 U.S.C. §§ 1671–1677, has manifestly granted such authorization to the Secretary of Labor by virtue of the following statutory terms:

"(c) No court of the United States or any State may make, execute, or enforce any order or process in violation of this section." 15 U.S.C. § 1673.

"The Secretary of Labor, acting through the Wage and Hour Division of the Department of Labor, shall enforce the provisions of this subchapter." 15 U.S.C. § 1676.

It is reasonable to find "express authorization" to bring enforcement actions of the present kind in these statu-

tory provisions, in view of the obvious fact that the Act would otherwise be rendered unenforceable and a dead letter. *Cf.* Providence & New York Steamship Co. v. Hill Mfg. Co., 109 U.S. 578, 3 S.Ct. 379, 27 L.Ed. 1038 (1883); Dilworth v. Riner, 343 F.2d 226 (5 Cir., 1965).

Second, the Supreme Court has ruled that injunctive suits brought by the United States are not barred by 28 U.S.C. § 2283. Leiter Minerals, Inc. v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957); Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). By the better view, the exception thereby created for the United States extends as well to agencies and officers of the United States Government, suing to enforce federal laws. NLRB v. Roywood Corporation, 302 F.Supp. 167, 168 (S.D.Ala., 1969), aff'd. 429 F.2d 964, 970 (5 Cir., 1970); Machesky v. Bizzell, 414 F.2d 283 (5 Cir., 1969).

Third, as the Court stated in *Mitchum:*

"The test, rather, is whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding. See *Toucey* . . . [Toucey v. N. Y. Life Ins. Co., 314 U.S. 118, 132–134, 62 S.Ct 139, 86 L.Ed. 100]; Kline v. Burke Construction Co., 260 U.S. 226, [43 S. Ct. 79, 67 L.Ed. 226]; Providence & N. Y. S. S. Co. v. Hill Mfg. Co., 109 U.S. 578, 599 [3 S.Ct. 379, 27 L.Ed. 1038]; Treinies v. Sunshine Mining Co., 308 U.S. 66, 78 [60 S.Ct. 44, 84 L.Ed. 85]; Kalb v. Feuerstein, 308 U.S. 433 [60 S.Ct. 343, 84 L.Ed. 370]; Bowles v. Willingham, 321 U.S. 503 [64 S.Ct. 641, 88 L.Ed. 892]." Mitchum v. Foster, *supra,* 407 U.S. at 238, 92 S.Ct. at 2160.

It is obvious that the Consumer Credit Protection Act can be given its intended scope only by the stay of state court proceedings if that is necessary.

29. The Court further concludes that, if necessary, an injunction may properly issue against the Judge of the Hamilton Municipal Court as well as the Clerk of the Court. This is true because state court judges are in no sense immune from the injunctive power of a federal court, where their actions are in contravention of law or exceed their constituted authority. Such injunctions are viewed in an entirely different light from suits which seek to hold such judges liable in *damages* for their judicial acts. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); United States v. Clark, 249 F.Supp. 720 (S.D.Ala., 1965); Rousselle v. Perez, 293 F.Supp. 298, 299 (E.D.La., 1968); Cassidy v. Ceci, 320 F.Supp. 223, 228 (E.D. Wisc., 1970); Stambler v. Dillon, 288 F.Supp. 646, 649 (S.D.N.Y., 1968).

30. Next, there has been some suggestion in this case that the Court might properly *abstain* from any decision, pending resolution of certain unsettled questions of state garnishment law, in deference to the delicate balance of state-federal relations which should be respected by the federal judiciary.

The Court concludes that there is not a sound basis for abstention in this case. The so-called "judge-made doctrine of abstention," first enunciated in Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), justifies avoidance of decision by the federal courts only in narrowly limited special circumstances. See Propper v. Clark, 337 U.S. 472, 489–491, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949); Zwickler v. Koota, 389 U.S. 241, 248–249, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Garvin v. Rosenau, 455 F.2d 233 (6 Cir., 1972). Typically those circumstances involve a federal constitutional question decision of which could be avoided by clarification of an underlying issue of state law or diversity cases in which a sensitive and unresolved state law question could better be resolved in the state courts.

But where, as here, the necessity for exercise of federal jurisdiction is clear, and issues of state law are either peripheral or basically irrelevant to the decision of the federal question, no basis for abstention exists. City of Chicago v. A., T. & S. F. Ry. Co., 357 U.S. 77, 84, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958); Howell v. Citizens First National Bank of Ridgewood, 385 F.2d 528 (3 Cir., 1967).

31. The tying of the order in the *Cleveland Municipal Court* [4] case to the contents of "Answer of Employer (Garnishee)" prescribed by Ohio Revised Code § 1911.332 has led the *amici curiae*, who have a special expertise and interest in the area of creditors' rights, to conclude that proceedings in aid of execution in county, municipal, and common pleas courts are not affected by the *Cleveland* decision (see memorandum of law of Cincinnati Bar Association, document 22, pages 4, et seq.).

We disagree. More to the point, we want it clear that we conclude that the law as declared herein applies to proceedings in aid of execution (Ohio Revised Code §§ 1917.37, et seq. and §§ 2333.01 et seq.) as well as the attachment proceedings (Ohio Revised Code §§ 1901.33 et seq., and §§ 2715.01 et seq.) in all Ohio courts.

As pointed out by Judge Thomas in Hodgson v. Cleveland Municipal Court, *supra*, at 429:

"Title 15 U.S.C. § 1672 defines the key words 'earnings,' 'disposable earnings,' and 'garnishment.'

\* \* \* \* \* \*

"The term 'garnishment' is defined as

" '[A]ny legal or equitable procedure through which the equitable earnings of an individual are required to be withheld for payment of any debt.'

Entitled 'Restriction on Garnishment,' section 1673(a) imposes a maximum on the 'aggregate disposable earnings of an individual for any workweek which is subjected to garnishment \* \* \*.' "

In view of this, whatever definition is given to "garnishment" for other purposes (e. g., those discussed under section II in Lynch v. Household Finance Corporation, 405 U.S. 538, 553–558, 92 S.Ct. 1113, 1122–1125, 31 L.Ed.2d 424 (1972), it is declared that for the purpose of this decision the Consumer Credit Protection Act governs proceedings in aid of execution in all courts as well as "garnishment" pursuant to the "attachment" provisions of the Ohio Revised Code in all courts. The fact that the order in the Cleveland case requires appropriate changes in forms now in use by the defendants (and prescribed by statute for certain of the proceedings) is not intended to indicate otherwise.

We recognize, as pointed out by the *amici curiae* (page 4 of the Cincinnati Bar Association brief), that Ohio statutes with respect to the seizure of personal earnings entitled "attachment," and those with respect to execution on personal earnings after judgment, i. e., "proceedings in aid of execution," are found in four separate and totally unconnected chapters of the Ohio Revised Code. These are all applicable to the defendants, however, because municipal courts apply those statutes contained in the common pleas courts section in cases where the original amount sought by the creditors exceeds $500 and apply those sections applicable to county courts in cases where the original amount sought by the creditor is less than $500. Thus the sections applicable in suits where the original amount sought exceeds $500 are those contained in §§ 2715, et seq., for "attachment" and § 2333 for "proceedings in aid." For cases where the original amount sought is $500 or less the sections governing procedures in the county courts are applicable, and these are contained in § 1911 for attachment and § 1917 for proceedings in aid.

4. Hodgson v. Cleveland Municipal Court, supra, at 438.

We agree with the Secretary that it would make no sense to revise the formula to conform to federal law only in the limited area of "attachments," which, under the 1970 amendments of the Ohio statute must be based on a judgment in the same manner as a proceeding in aid of execution of a judgment. Furthermore, prejudgment wage attachments are, as pointed out by the Secretary (page 17, reply brief), for all practical purposes "constitutionally defunct" under Sniadach v. Family Finance Corporation of Bay View, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

Ohio Revised Code § 1911.-33(A) (county courts) and § 2715.11(A) (common pleas courts) clearly state that:

"An *action in garnishment* may be commenced . . . by filing of an oath in writing . . . ." (Emphasis added.)

The Secretary asserts that this shows the Legislature intended these provisions to apply generally to all garnishments, including those in aid of execution. We agree. Furthermore, as pointed out by the Secretary, amended § 2329.62 Ohio Revised Code which makes reference to the federal Consumer Credit Protection Act expresses the legislative intent to enact—

". . . garnishment laws which provide protection to debtors which equals or exceeds that contained in the federal law, and all the laws of this State affecting such garnishments shall be construed so as to effect this purpose."

Certainly the latter embraces statutes governing proceedings in aid of execution as well as those relating to prejudgment attachment, even though the section is the lead-off section in the subchapter governing exemption from execution. It is in the chapter entitled "Execution against property." It is in Title 23 entitled "Courts-Common Pleas." In this connection the Attorney General of Ohio nowhere tried to argue that "this formula" applies only to the limited area of prejudgment attachments (Secretary's reply brief, page 17).

32. We also recognize that in proceedings in aid Ohio courts have held that upon receipt of notice by the judgment debtor of a proceeding in aid of execution, the judgment creditor has a lien on earnings which accrue during the period from the time of the receipt of the notice to the time of the hearing as well as those earnings owed up to the time of the receipt of the notice. We declare this violative of the Consumer Credit Protection Act. Its restrictions preclude the application of a garnishment process to earnings paid or payable for any pay period in any manner which limits, conditions, or interferes with the statutory right of the wage earner to receive, when otherwise payable, the full portion of his earnings for such pay period which 15 U.S.C. § 1673(a) reserves to him as immune from garnishment. See Higgins v. Wilkerson, 63 CCH Labor Cas. ¶32379 (D.C.Kan., 1970). It is therefore not necessary in the exercise of its pendent jurisdiction for this Court to "give an authoritative resolution" of problems created by what are correctly characterized as the "abstruse" Ohio laws governing attachment and proceedings in aid of execution in county, municipal and common pleas courts.

Even if it was necessary, we doubt whether it would be appropriate, because only the Supreme Court of Ohio could make such an "authoritative" construction of the state law. We simply hold that if the Ohio law, statutory or otherwise, is construed to permit the subjection to garnishment of a greater amount of an employee's disposable earnings for each pay period than permitted under § 303(a) of Title III of the Consumer Credit Protection Act (15 U.S.C. § 1673(a)), it violates federal standards.

If the applicable Ohio Code sections are construed to provide for a "continuing lien" this could operate so as to "freeze" the employee's pay completely until the hearing, absent any specific protective language in the Ohio statute.

We find no such protective language such as that in the Virginia statute (§ 8–445) which caused the Wage and Hour Administrator to exempt garnishments issued under the laws of Virginia. (For the Administrator's ruling of January 7, 1971, see 36 F.R. 367.) Said section provides ". . . may pay to such employee when due wages or salary not exceeding the amount exempted by § 34–29 . . . ." Ohio statutes have no such protective feature.

Furthermore, there is no statutory guarantee that the hearing may not be continued and in that event there could be an overlap in garnishments.

33. We think it inadvisable to have an order of injunction that deals with forms prescribed by statute used in garnishment proceedings because any such discussion or order gives a wrong impression that this is a battle of forms growing out of a difference in procedures. It thus gives the wrong impression that the federal law sets up *any* procedure. See Hodgson v. Cleveland Municipal Court, *supra,* at 437. It does not. As pointed out by the Secretary, the federal law has nothing to do with procedure. That is left up to the States.

To repeat, the federal statute has nothing whatever to do with the *machinery* for garnishment of wages. It affects only the State's formula for determining how much of a debtor's earnings may be subjected to garnishment. The federal statute does not "permit" weekly garnishment any more than it "permits" monthly garnishment. It has nothing to do with such matters because it is not —repeat, not—a procedural statute.

## CONCLUSION AND ORDER

In summary, with the possible exception of our Conclusion of Law No. 25, we follow the unappealed holding of Judge Thomas in The *Cleveland Municipal Court* case, *supra,* that Ohio statutes prescribing garnishment formulae are

preempted by federal law, but the once-a-month garnishment section stands.

Finally, we deny the plaintiff's request for an injunction at this time but retain jurisdiction.