**LONG ISLAND TRUST COMPANY,**
Plaintiff-Appellant,

v.

**UNITED STATES POSTAL SERVICE,**
Defendant-Appellee.

No. 721, Docket 80–6187.

United States Court of Appeals,
Second Circuit.

Argued Feb. 5, 1981.
Decided April 23, 1981.

Elliot Phillips, Mineola, N. Y. (Halpern, Halpern & Axelrod, Mineola, N. Y., of counsel), for plaintiff-appellant.

Abraham Skoff, Asst. U. S. Atty., Eastern District of New York, Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., for the Eastern District, and Miles M. Tepper, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for defendant-appellee.

Before WATERMAN, MANSFIELD, and KEARSE, Circuit Judges.

1. Long Island Trust commenced its action in the Nassau County District Court, from which USPS removed it to federal court pursuant to 28 U.S.C. § 1441(a) (1976) and 39 U.S.C. § 409(a) (1976).

2. C.P.L.R. § 5231(e) provides in pertinent part as follows:

KEARSE, Circuit Judge:

Plaintiff-appellant Long Island Trust Company ("Long Island Trust") appeals from a judgment of the United States District Court for the Eastern District of New York, George C. Pratt, *Judge,* dismissing its complaint against defendant-appellee United States Postal Service ("USPS") challenging USPS's refusal to honor an income garnishment served by Long Island Trust with respect to a USPS employee. The district court granted summary judgment on the ground that the employee's wages were already subject to garnishment for family support in excess of 25 percent of his weekly disposable earnings, and the Consumer Credit Protection Act of 1970 (the "Act"), 15 U.S.C. § 1671 *et seq.* (1976 and Supp. III 1979), prohibits further garnishment by a judgment creditor. We affirm.

## FACTS

The facts are not in dispute. On August 15, 1978, Long Island Trust recovered a judgment in the amount of $914.38 against one Donald Cheshire, Jr. On October 20, the judgment remained unsatisfied to the extent of $607.50, and Long Island Trust caused an income execution to be served on USPS, Cheshire's employer, directing that 10 percent of Cheshire's bi-weekly wages be paid to the county sheriff for the benefit of Long Island Trust. USPS refused to comply with the income execution, claiming that more than 25 percent of Cheshire's disposable income was already being withheld for court ordered support payments under New York Pers.Prop. Law § 49–b (McKinney Supp.1980), and that any further deductions from Cheshire's wages were barred under the Consumer Credit Protection Act.

Long Island Trust commenced the present proceeding[1] pursuant to N.Y.C.P.L.R. § 5231(e) (McKinney 1978) to recover the accrued installments from USPS.[2]

A person served with an income execution shall withhold from money then or thereafter due to the judgment debtor installments of ten percent thereof and pay them over to the sheriff. If such person shall fail to so pay the sheriff, the judgment creditor may commence

USPS moved for summary judgment on the basis of the fact that $214 of Cheshire's bi-weekly disposable income of $508, or 42 percent, was already being garnished pursuant to orders of support issued by the Nassau County Family Court.[3] It argued that the Consumer Credit Protection Act prohibits garnishment on behalf of a judgment creditor where the employee's disposable income is already garnished to the extent of 25 percent or more. Long Island Trust did not dispute the facts, but argued that both New York law and the Act allow simultaneous garnishment for family support and payment of judgment creditors, even when the amount of the support garnishment exceeds 25 percent.

The district court adopted the interpretation of the Act pressed by USPS, and entered judgment dismissing the action.

### DISCUSSION

The cardinal provision of the Act is 15 U.S.C. § 1673, which, as amended in 1977, provides in pertinent part as follows:

§ 1673. Restriction on garnishment

(a) Maximum allowable garnishment

Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed

(1) 25 per centum of his disposable earnings for that week . . . .

(b) Exceptions

(1) The restrictions of subsection (a) of this section do not apply in the case of

(A) any order for the support of any person issued by a court of competent jurisdiction or in accordance with an administrative procedure, which is established by State law, which affords substantial due process, and which is subject to judicial review.

\* \* \* \* \* \*

a proceeding against him for accrued installments.

(2) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed—

(A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual's disposable earnings for that week; and

(B) where such individual is not supporting such a spouse or dependent child described in clause (A), 60 per centum of such individual's disposable earnings for that week;

except that, with respect to the disposable earnings of any individual for any workweek, the 50 per centum specified in clause (A) shall be deemed to be 55 per centum and the 60 per centum specified in clause (B) shall be deemed to be 65 per centum, if and to the extent that such earnings are subject to garnishment to enforce a support order with respect to a period which is prior to the twelve-week period which ends with the beginning of such workweek.

"Disposable earnings" is defined in §§ 1672(a) and (b) as that part of an individual's gross compensation for personal services that remains after deduction of amounts required by law to be withheld. "Garnishment" is defined in § 1672(c) as "any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt."

■ Preliminarily we note that the Act does not seek to establish any order of priority among garnishments. There being no other federal statutory provision setting priorities as between support order garnishments and creditor garnishments, the matter of priority is thus to be determined by state law. 29 C.F.R. § 870.11(a)(2) (1980);

3. At the time the income execution was served, Cheshire's compensation was lower, and the $214 support garnishment amounted to an even higher percentage of his disposable income.

*Marshall v. District Court for the Forty-First-b Judicial District*, 444 F.Supp. 1110, 1116 (E.D.Mich.1978); *Liedka v. Liedka*, 101 Misc.2d 305, 423 N.Y.S.2d 788 (Family Ct. Onon.Co.1979). New York law provides that as between garnishments of the same type, the prior in time is to be satisfied first. N.Y.C.P.L.R. § 5231(h) (McKinney 1978). As between creditor garnishments and support order garnishments, New York gives priority to those for support, regardless of the timing of those garnishments. N.Y.Pers.Prop. Law § 49–b; *Liedka v. Liedka, supra; General Motors Acceptance Corp. v. Metropolitan Opera Ass'n*, 98 Misc.2d 307, 413 N.Y.S.2d 818 (App.Term, 1st Dep't 1978); *Gertz v. Massapequa Public Schools*, N.Y.L.J., Nov. 17, 1980, at 17 (Sup.Ct.Nas.Co.1980). On either basis in the present case, the support order garnishments of Cheshire's wages have priority over Long Island Trust's income execution.

Turning to the language of the Act, we read § 1673 as placing a ceiling of 25 percent on the amount of an employee's disposable earnings that is subject to garnishment, with the exception that the ceiling may be raised as high as 65 percent if the garnishment is to enforce family support orders.[4] Thus, when garnishments are sought only by creditors, no more than 25 percent of disposable earnings may be withheld for that purpose; when the garnishments are sought only to enforce support orders, as much as 65 percent of disposable earnings may be withheld for that purpose.

The interrelationship, however, between the general rule and the exception, when both creditor and support garnishments are sought, is less clear. Long Island Trust contends that the Act was designed to promote the "orderly payment of consumer debts," H.R.Rep.No.1040, 90th Cong., 2d Sess. (1968), *reprinted in* 2 (1968) U.S.Code Cong. & Ad.News 1962, 1979 ("H.R.Rep.Reprint"). It argues, from this premise, that support garnishments should be considered entirely independently of creditor garnishments, and that the Act should be construed as reserving 25 percent of the employee's earnings for attachment by creditors and leaving 75 percent for personal and family expenses, including the satisfaction of family support orders. We find no basis for this argument either in the language of the statute or in its legislative history.

■ To begin with, Long Island Trust's notion of the principal purpose of the Act is untenable. In passing the Consumer Credit Protection Act, Congress acted principally not to protect the rights of creditors, but to limit the ills that flowed from the unrestricted garnishment of wages.[5] It was concerned with the burgeoning number of personal bankruptcies (208,000 in 1967, as contrasted with 18,000 in 1950), which it felt put an undue burden on interstate commerce. And it observed that the number of personal bankruptcies was vastly higher in states that had harsh garnishment laws than in states that did not allow garnishment,[6] a disparity that tended to destroy

4. Section 1673 makes other exceptions, not here pertinent, for orders of a bankruptcy court and debts due for federal or state taxes.

5. The congressional findings and declaration of purpose were as follows:
   (a) The Congress finds:
   (1) The unrestricted garnishment of compensation due for personal services encourages the making of predatory extensions of credit. Such extensions of credit divert money into excessive credit payments and thereby hinder the production and flow of goods in interstate commerce.
   (2) The application of garnishment as a creditors' remedy frequently results in loss of employment by the debtor, and the resulting disruption of employment, production, and

consumption constitutes a substantial burden on interstate commerce.
   (3) The great disparities among the laws of the several States relating to garnishment have, in effect, destroyed the uniformity of the bankruptcy laws and frustrated the purposes thereof in many areas of the country.
   (b) On the basis of the findings stated in subsection (a) of this section, the Congress determines that the provisions of this subchapter are necessary and proper for the purpose of carrying into execution the powers of the Congress to regulate commerce and to establish uniform bankruptcy laws.
15 U.S.C. § 1671.

6. In Texas and Pennsylvania, which prohibit wage garnishment, the numbers of nonbusiness bankruptcies per 100,000 population were five

the uniformity of the bankruptcy laws. The Act was thus designed to curtail sharply the rights of creditors to garnish employee wages, and the above reference to the "orderly payment of consumer debts" was, as Long Island Trust recognizes, made in the context of the following overview which reveals Congress's principal concern with the welfare of the debtor:

> The limitations on the garnishment of wages adopted by your committee, while permitting the continued orderly payment of consumer debts, will relieve countless honest debtors driven by economic desperation from plunging into bankruptcy in order to preserve their employment and insure a continued means of support for themselves and their families.

*Id.* at 1979. Indeed, as originally introduced, the House bill contained a blanket prohibition against all garnishment of wages. *See id.* at 1978; *Hodgson v. Hamilton Municipal Court*, 349 F.Supp. 1125, 1130 n.3 (S.D.Ohio 1972). Later, yielding to the argument that a complete ban on garnishment "would unduly restrict honest and ethical creditors, while permitting those fully capable of paying just debts to escape such responsibilities," H.R.Rep.Reprint at 1978, the bill was amended, initially to allow garnishment of wages to the extent of approximately 10 percent,[7] *id.*, and eventually, as enacted in 1968, to allow garnishment to the extent of 25 percent. Conf. Rep.No.1397, 90th Cong., 2d Sess. (1968), *reprinted in* 2 (1968) U.S.Code Cong. & Ad. News 2021, 2029; *see* Remarks of Representative Sullivan, 114 Cong.Rec. 14388 (1968). Even as enacted, the Act provides that in any state that provides stricter laws against garnishment, the Act will yield to state law. 15 U.S.C. § 1677. Thus, so far from placing principal emphasis on creditor protection, the Act only restricted, and in no way expanded, the rights of creditors.

As originally passed, the Act provided that support order debts were not subject to the 25 percent restriction, but it did not limit the amount of an employee's earnings that could be garnished to enforce a support order. Nothing in the legislative history stated expressly that when 25 percent or more of an employee's earnings had been garnished for support no further garnishments could occur. Nor was there any suggestion that Congress envisioned that support order garnishments were to be permitted as an addition to the general 25 percent limitation. The descriptions of the support order exception stated simply that "Section [1673(b)] excepts from this prohibition debts due for the support of any person ...," H.R.Rep.Reprint at 1989, and "[t]he restriction on garnishment provided for in the bill does not apply to any debt due to a court order for the support of any person ...." *Id.* at 1978. The express goal of the statute as a whole, however, was to "*restrict*[ ] the availability of garnishment as a creditors' remedy," *id.* at 1989 (emphasis added), and it is this overall goal that we must bear in mind. *See Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974).

In 1977, Congress amended the Act to limit the amount of earnings that could be garnished to enforce a support order. Senator Nunn, the sponsor of the amendment, described the need for such a restriction as follows:

> There is no limit in Federal law on the percentage of wages or other employment-related income which may be garnished for child support or alimony under court order. Many States allow garnishment of 100 percent of earnings .... Because of the arrearages that have resulted through incomplete payments (or no payments) of child support and alimony orders, the wages or the annuities of a number of people have been garnished at 100 percent for periods of many months

---

and nine respectively; in states having relatively harsh garnishment laws the rates ranged from 200 to 300 per 100,000 population. H.R. Rep. Reprint at 1978.

7. The interim amendment exempted the first $30 of an employee's earnings from garnishment and placed a 10 percent limitation with respect to earnings in excess of $30. H.R.Rep. Reprint at 1989.

and even years. This has sometimes caused the second families of the fathers in these cases to face financial ruin. 123 Cong.Rec. 6728 (1977). Thus the Act was amended to place the current 50–65 percent ceiling on garnishments to enforce orders of support, giving further proof of Congress's primary concern for the financial well being of the employee.

■ Given the overall purpose of the Act and the priority accorded in New York to garnishments for support, we find no merit in Long Island Trust's argument, that 25 percent of an employee's disposable earnings are reserved for creditors and that up to 65 percent *more* may be garnished to enforce a support order. Certainly the structure of the section—with subsection (a) entitled "Maximum allowable garnishment" and subsection (b) setting forth "Exceptions" for support garnishments—does not suggest such an interpretation. Had Long Island Trust's interpretation been the intended thrust of the Act, subsection (b) would more appropriately have been entitled "Additions" rather than "Exceptions." And in view of Congress's overall purpose of restricting garnishments in order to decrease the number of personal bankruptcies, it would be unjustifiable to infer that the general ceiling and its exceptions were intended to be cumulated to allow garnishments of disposable income to the total extent of 90 percent. Thus, we hold that where, as here, support garnishments have priority and result in the withholding of 25 percent or more of an employee's disposable earnings, creditor garnishment is impermissible under the Act.

Our conclusion is reinforced by the manner in which § 1673 has been construed by the Secretary of Labor, who is charged with enforcing the provisions of the Act. Department of Labor regulations state in pertinent part as follows:

Compliance with the provisions of section [1673](a) and (b) may offer problems when there is more than one garnishment. In that event the priority is determined by State law or other Federal laws as the CCPA contains no provisions controlling the priorities of garnishments. However, in no event may the amount of any individual's disposable earnings which may be garnished exceed the percentages specified in section [1673]. To illustrate:

\* \* \* \* \* \*

(iv) If 25% or more of an individual's disposable earnings were withheld pursuant to a garnishment for support, and the support garnishment has priority in accordance with State law, the Consumer Credit Protection Act does not permit the withholding of any additional amounts pursuant to an ordinary garnishment which is subject to the restrictions of section [1673(a)].

29 C.F.R. § 870.11. While this rule was announced and became effective on May 29, 1979, a date subsequent to the service of the garnishments at issue in the present case, it is consistent with the Secretary's prior interpretations of the interplay between subsections (a) and (b) of § 1673, both as originally enacted and as amended. Thus, in *Marshall v. District Court for the Forty-First-b Judicial District, supra,* 444 F.Supp. at 1114, the court, in reaching a result similar to that reached here today, observed that the Secretary had written a letter to the Michigan state court in 1975, taking the position that

an amount withheld pursuant to a support order absorbed disposable earnings for purposes of the application of the general restrictions, notwithstanding the fact that a court order for the support of any person was itself exempt from the general restrictions.

We are mindful of the argument that the statute as thus construed may help debtors to evade payment of their just debts if they collusively procure orders of support that exceed the general statutory maximum of 25 percent. This possibility is lessened in New York by the state's requirement of full financial disclosure by the parties to a support proceeding, and by the New York courts' responsibility to determine both the needs of the family and the means of the wage earner. *Liedka v. Liedka, supra,* 423

N.Y.S.2d at 793. More importantly, the point that garnishment restrictions· may have the effect of assisting debtors to avoid payment of their debts was considered, and indeed vigorously debated, in Congress prior to the passage of the Act. *See, e. g.,* H.R.Rep.Reprint at 1978; remarks of Representative Jones, 114 Cong.Rec. 1834–35 (1968).[8] Thus, even had New York not so clearly mandated safeguards against collusion, we would hardly feel free to tamper with the way in which Congress has chosen to balance the interests of the debtor, his family, and his creditors.

Finally, we point out that this interpretation of the Act does not leave Long Island Trust powerless to collect on its judgment. N.Y.C.P.L.R. Article 52 provides a variety of means for the enforcement of money judgments. The Consumer Credit Protection Act merely prohibits, in the present circumstances, the garnishment of Cheshire's wages. Since the Act has no application to anything other than Cheshire's earnings before they are paid out by his employer (*see Kokoszka v. Belford, supra* (Act does not apply to income tax refunds); *Usery v. First National Bank of Arizona,* 586 F.2d 107 (9th Cir. 1978) (nor to bank accounts)), it does not purport to immunize his other assets.

The judgment dismissing the complaint is affirmed.

---

**8.** *See also* remarks of Representative Sullivan, 114 Cong.Rec. 14388 (1968):

By far, the biggest controversy in the whole bill—even larger than the controversy over revolving credit—involved the subject of garnishment. In H.R.11601 as originally introduced, we proposed the complete abolishment of this modern-day form of debtors' prison . . . .

But we were willing to listen to the weight of the testimony that restriction of this practice would solve many of the worst abuses, while abolishment might go too far in protecting the career deadbeat.