2016 IL App (3d) 160420

Opinion filed December 14, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2016

| | | |
|---|---|---|
| *In re* MARRIAGE OF JULIE SCHOMBURG, | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Petitioner-Appellee, | ) | Tazewell County, Illinois. |
| | ) | |
| | ) | Appeal No. 3-16-0420 |
| and | ) | Circuit No. 10-F-356 |
| | ) | |
| | ) | |
| DUANE OSLAND, | ) | Honorable |
| | ) | Thomas A. Keith, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE CARTER delivered the judgment of the court.
Presiding Justice O'Brien and Justice Wright concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal arises from posttrial proceedings stemming from the dissolution of the marriage between the respondent, Duane Osland, and his first ex-wife, the petitioner, Julie Schomburg. Duane appeals the trial court's denial of his request for reimbursement of monies garnished from his severance and bonus checks, which had been paid to Julie for child support and child support arrearages. On appeal, Duane argues that he not only has an obligation to pay child support to Julie, but he also has an obligation to pay his child support for his daughter from his second marriage with Tunde Osland, his second ex-wife. Tunde is not a party in this case.

Duane requests this court to (1) reapportion the 50% lien amounts that were placed on his bonus and severance checks and redistribute the money equally between his two current child support orders and (2) vacate the child support order from his other divorce case (case number 14-D-03) ordering him to pay $3452.42 from his severance check to his second ex-wife, Tunde. We affirm the trial court's denial of Duane's petition, in which he requested the reallocation of the garnished amounts that he had styled as a petition to modify child support.

¶ 2                                    FACTS

¶ 3        Duane and Julie were married on May 22, 1993. Two children were born to the parties during their marriage. On March 31, 2003, their marriage was dissolved pursuant to a court order entered in Clayton County, Iowa. At the time of the parties' divorce, Duane's income was $800,000 per year. Duane was ordered to pay Julie child support in the amount of $4000 per month to commence on April 1, 2003, with the amount reduced to $2730 per month upon the oldest child graduating from high school. Duane was also ordered to pay Julie spousal support in the amount of $8300 per month for eight years and to pay Julie "as a cash award" the sum of $750,000 payable in three yearly installments of $250,000, with 10% interest to accrue on any delinquent payments.

¶ 4        On October 7, 2010, in Iowa, Julie filed a "Child Support Enforcement Transmittal #1-Initial Request" for the enforcement of the Iowa support order in Illinois. Julie alleged that Duane's support obligation was $12,400 per month and that there were arrearages in the amount $523,391 for a period through February 3, 2010. In support of the request for enforcement in Illinois, Julie attached the affidavit of Wendy Leuenberger of the Iowa Child Support Recovery Unit, who averred that she had calculated the child support delinquency in this case to be $523,391 as of February 3, 2010. Julie also attached a printout from the Iowa collection and

2

reporting system showing that Duane had paid her support in the amount of $28,433 in 2009, $300 in 2008, $155,351.41 in 2006, $44,013 in 2005, $156,859 in 2004, and $154,552.59 in 2003. Duane filed a *pro se* objection to the validity of Julie's claims, challenging the supporting documentation. On May 26, 2011, the trial court in Tazwell County, Illinois, found that Duane had not established a defense to Julie's registration request. Pursuant to the Uniform Interstate Family Support Act (750 ILCS 22/602 (West 2010)), the Iowa child support order was registered in Tazewell County, Illinois by the Illinois Department of Healthcare and Family Services (IDHFS).

¶ 5        On October 28, 2014, in Illinois, Duane filed a petition to modify child support in light of one of the parties' minor children becoming emancipated and in light of Duane having a decrease in earnings. Duane indicated the corporation, from which he had been earning $1.5 million per year, had been dissolved, and he was currently employed by Caterpillar, Inc. "earning a substantial wage." The trial court reduced Duane's child support obligation to $2730 for the period of April 1, 2012 to October 28, 2014, and thereafter to $1209 per month.

¶ 6        On January 26, 2015, the parties entered an agreed order indicating that Duane's maintenance obligation to Julie was terminated retroactive to July 12, 2006 (the date of Julie's marriage to her new husband), with the parties "attempting to calculate arrearages/credits and settlement amounts owed." Julie claimed that as of August 31, 2014, there was a "support/maintenance arrearage of $650,105.65" with that amount including the two property installments of $250,000 that Duane had failed to pay in 2004 and 2005. In support of her petition for a rule for Duane to show cause why he should not be held in contempt for failing to comply with the divorce decree, Julie attached a notice from the IDHFS dated September 30,

3

2014, indicating Duane was responsible for paying "child support" in this case in the amount of $650,105.65.

¶ 7        On March 6, 2015, Duane filed a petition for redetermination of arrearages. Duane conceded that he did not make the court-ordered $250,000 installment payments in 2004 and 2005 due to an economic downturn in the auto industry, resulting in the bankruptcy of his corporation but argued his overpayment of his maintenance obligation for eight years created a sizeable credit toward the outstanding balance of his support obligations. He also filed an emergency motion for "alternative satisfaction" of his support obligation, indicating that he must travel out of the country for work purposes but was unable to do so due to his inability to renew his passport because of the "large and erroneous support arrearage." Duane requested that he be allowed to satisfy any remaining balance owed to Julie with a life insurance policy naming Julie as the beneficiary because the loss of his employment would have a substantial impact on the two children for whom he was paying child support.

¶ 8        On March 6, 2015, the trial court entered an order regarding Duane's arrearages. The trial court found, over the objection of Julie, that the arrearage shown by the State of Illinois for over $650,000 was "erroneous" but the actual arrearage or overage had not yet been calculated. The trial court noted that Duane "remains current in his child support obligation and that his maintenance obligation terminated in 2006." In a separate order the trial court listed Duane's arrearage as less than $5000, not as an actual calculation of his arrearage, but to show that encumbrances on his ability to renew his passport were erroneous. On April 2, 2015, Julie filed a motion to vacate the trial court's order of March 6, 2015, arguing that a full evidentiary hearing on the amount of Duane's arrearages was required.

4

¶ 9        On April 17, 2015, Duane filed a petition to terminate child support and a request for reimbursement of overpayments. In support, Duane attached a letter dated March 24, 2015, from the Office of the Illinois Attorney General requesting information as to whether Duane was in arrears as to child support in the amount of $172,595.79. He also attached a further determination letter from the assistant attorney general indicating a determination was made that Duane had overpaid Julie $360. Duane also attached verification of those additional payments, which showed Julie had received a bond turnover of $9,772.38 from Duane on July 26, 2007, and $553,337.89 from the bankruptcy trustee to be paid toward the former property settlement. In response, Julie claimed that the $553,337.89 disbursed to her by the bankruptcy trustee had been processed through the proper agencies and was previously calculated in the alleged arrearages. On April 29, 2015, by agreement of the parties, the trial court vacated its order finding Duane's arrearage to be less than $5000, with all issues related to arrearages and overpayment reserved.

¶ 10        On September 18, 2015, Julie filed a motion for contempt, claiming that Duane failed to notify of her of a raise he received in April 2015 and failed to notify her of a $31,270.59 bonus he received in March 2015. She also filed a motion to modify child support upward as a result of Duane's pay increase and bonus. On September 30, 2015, Duane filed a petition to modify his child support obligation downward because he had been notified that he would be terminated from his employment, which he claimed was due to his inability to travel internationally as the result of being unable to renew his passport because of alleged child support arrearages. Duane indicated that he was paying Julie $1209 per month in child support and paying Tunde $871.81 per month for child support and $500 per month for spousal support. Duane requested a reduction in his monthly child support obligation to Julie.

¶ 11        On December 29, 2015, the trial court entered an order addressing several pending issues. The trial court found that Duane was terminated from Caterpillar through no fault of his own, with the termination due to a reduction in workforce as opposed to his inability to obtain a passport or from some kind of misconduct. Since the termination was not Duane's fault, the trial court considered his request for a downward modification of child support and reduced Duane's child support to Julie to $116 per week (20% of his $580 per week of unemployment pay), beginning on January 1, 2016. The trial court did not regard Duane's short-lived pay increase prior to his termination to be a substantial change of circumstances and denied Julie's motion to modify child support upward. The trial court ruled that Duane's gross severance check was $34,811, of which he would owe Julie "a one time lump sum payment in child support of $4455" (20% of the net pay of the severance check). The trial court noted that "the most helpful evidence to assist the Court" in determining Duane's child support arrearage was the State of Illinois Child Support Services "support calculation worksheet" provided by Julie, which showed the child support arrearage to be $171,804.59 as of June 30, 2015. The trial court ordered the parties to meet with the assistant attorney general "for calculation of the final arrearage, including interest and arrearage from July 2015 to present."

¶ 12        On February 22, 2016, Julie filed a petition for rule to show cause for Duane's failure to pay her $4455 from his severance check. On February 23, 2016, the trial court entered an order, by the agreement of the parties, for a review on April 18, 2016, of the updated support arrearages determination by the IDHFS through March 31, 2016, with the amounts to include statutory interest.

¶ 13        On April 7, 2016, Duane filed a "Petition to Modify Child Support." Duane indicated that Julie received $11,065.06 from his severance check as the result of a garnishment for child

6

support arrearages, which represented 50% of his net pay. Duane argued allowing 50% of the severance check to be disbursed to Julie was improper because a 50% garnishment is the maximum allowable garnishment under Illinois law and a portion of his severance check still had to be paid to Tunde, his second ex-wife, as ordered by the trial court in case number 14-D-03. In case number 14-D-03, the trial court had found the net pay from the severance check to be $17,712.16 (after Julie's 20% for child support was deducted) and ordered Duane to pay $3542.42 to Tunde by June 4, 2016, in addition to $90 that had already been paid to her.  In support of the petition, Duane attached the court order from case number 14-D-03 dated March 4, 2016, and a notice of child support lien from IDHFS dated January 25, 2016. The notice of lien indicated that IDHFS was claiming a lien on Duane's monies as the result of a "child support order" entered on January 1, 2006, pertaining to case number 10-F-356—his family case with Julie. The notice of lien also indicated, "[t]here is now due the sum of $171,742.93, which may include interest." The notice of lien further indicated that if Duane disagreed with the balance owed then he could file a written request for a hearing within 15 days, but the lien "shall remain in full force and effect during the pendency of any protest or appeal." Duane also attached documentation showing that he was paid the severance check in the net amount of $22,140.13 on January 29, 2016, and he was paid a bonus in the net amount of $5046.65 on March 31, 2016. Duane indicated that both Julie and Tunde were to receive a 20% portion of those checks for child support payments, and the documentation showed Tunde had only received $90 while Julie received 50% of each check—$11,065.06 from the severance check and $2518.32 from the bonus check.

¶ 14        In her response to Duane's request for reimbursement of his garnished wages, Julie argued that Duane was believed to owe at least $100,000 in a child support arrearages and at

least $500,000 toward the outstanding property settlement. Julie acknowledged receiving 50% of Duane's net pay from his severance check in the amount of $11,065.06.

¶ 15      On April 18, 2016, the trial court entered a written order providing:

> "There are several motions which need to be heard regarding current support and satisfaction of arrearages which shall by heard on [July 7, 2016] at 9:00 a.m. AG [Attorney General] to provide current numbers."

¶ 16      On July 7, 2016, a hearing took place on Duane's request for the trial court to order Julie to return the monies taken by garnishment from his bonus and severance checks. The trial court indicated that there was no dispute that there was an arrearage owed by Duane to Julie. The trial court found Duane's net pay from the severance was approximately $22,000, of which Julie was paid approximately $11,000 by way of garnishment. The trial court found Julie had been paid her 20% court-ordered portion of the severance check ($4455), with the remainder of the $11,000 applied toward the arrearage Duane owed to her. The trial court denied Duane's request for Julie to return to him the garnished monies. Duane appealed.

¶ 17                         ANALYSIS

¶ 18      On appeal, Duane argues that the disbursement of the garnishment from his bonus and severance checks was improper where 50% of his net earnings were taken in the form of a lien for past due child support and given to Julie, where he also had an obligation to pay Tunde $3632.42 of that money. Duane contends that the trial court erred in denying his request for a reimbursement of a portion of his garnished wages in order for there to be an "equitable distribution" of the money between his two child support obligations. Julie argues there is no authority to support Duane's objection to the disbursement of the money or to support his contention that money should be reimbursed to him for some to be redistributed to Tunde.

8

¶ 19    Generally, issues of child support and the determination of child support arrearages are reviewed for an abuse of discretion. *In re Marriage of Burns & Stewart*, 357 Ill. App. 3d 468, 470 (2005). Where we examine a law to determine whether a certain remedy requested is available, we review the request *de novo*. *Id.*

¶ 20    Section 505(d) of the Illinois Marriage and Dissolution of Marriage Act (Act) provides:

"Any new or existing support order entered by the court under this Section shall be deemed to be a series of judgments against the person obligated to pay support thereunder, each such judgment to be in the amount of each payment or installment of support and each such judgment to be deemed entered as of the date the corresponding payment or installment becomes due under the terms of the support order. *Each such judgment shall have the full force, effect and attributes of any other judgment of this State, including the ability to be enforced. Notwithstanding any other State or local law to the contrary, a lien arises by operation of law against the real and personal property of the [supporting] parent for each installment of overdue support owed by the [supporting] parent.*" (Emphasis added). 750 ILCS 5/505(d) (West 2014).

¶ 21    Section 505(d) was added to the Act to make clear that each unpaid support payment was to be treated as a judgment. *Department of Healthcare & Family Services ex rel. Wiszowaty v. Wiszowaty*, 239 Ill. 2d 483, 488 (2011). The amount of past-due child support owed by a party cannot be modified or decreased because the past-due amounts that accrue before the party files a petition to modify child support are a vested and unmodifiable right. *Burns*, 357 Ill. App. 3d at 470. Past-due child support is a vested right of the designated recipient and is not subject to

9

reduction either as to the amount or time of payment. *In re Marriage of Heady*, 398 Ill. App. 3d 582, 585 (2010).

¶ 22    In order to modify a child support obligation, a parent must petition the court and get judicial approval of any changes. *In re Marriage of Sheaffer*, 2013 IL App (2d) 121049, ¶ 12 (citing *Blisset v. Blisset*, 123 Ill. 2d 161, 167 (1988)). Generally, a child support judgment may be modified only as to installments accruing after the moving party has provided due notice of his or her filing of the motion for modification. 750 ILCS 5/510(a) (West 2014). The potential retroactive application of a modification does not relieve the payor of payment of his current support obligation during the pendency of the motion to modify child support. *In re Marriage of Ingram*, 259 Ill. App. 3d 685, 691 (1994). A petition to modify child support "shall not delay any child support enforcement litigation or supplementary proceeding on behalf of the obligee, including, but not limited to, a petition for a rule to show cause, for non-wage garnishment, or for a restraining order." 750 ILCS 5/510(f) (West 2014).

¶ 23    A court does not have the power to retroactively modify a person's child support obligation but, in some cases, courts may give effect to an agreement of the parties or reduce the amount of child support under the doctrine of equitable estoppel. See *Sheaffer*, 2013 IL App (2d) 121049, ¶ 12; *Heady*, 398 Ill. App. 3d at 585. Where there is no basis for estopping the collection of a child support arrearage or there is no agreement or waiver of the vested right to collect the arrearage, it is error for a trial court to bar the child support recipient from engaging in lawful collection and enforcement activities. See *Heady*, 398 Ill. App. 3d at 585.

¶ 24    In Illinois, the Income Withholding for Support Act, which governs how much of an obligor's wages can be garnished to satisfy a support obligation, provides the amount withheld from a person's income "shall not be in excess of the maximum amounts permitted under the

federal Consumer Credit Protection Act [15 U.S.C. § 1601 *et seq.* (2000)].” 750 ILCS 28/35(c) (West 2014). The federal Consumer Credit Protection Act generally allows the garnishment of up to 25% of a person's disposable earnings to pay a creditor. 15 U.S.C. § 1673(a)(1) (2000). The Illinois Code of Civil Procedure places a ceiling on the garnishment of wages at the lesser of either 15% of gross pay or the amount by which disposable earnings exceed 45 times the minimum wage. 735 ILCS 5/12-803 (West 2014). Therefore, when garnishments are sought by a judgment creditor for nonsupport obligations, no more than the lesser of a person's 25% disposable earnings, 15% of gross earnings, or the amount by which disposable earnings exceed 45 times the minimum wage may be withheld for that purpose. *Commonwealth Edison v. Denson*, 144 Ill. App. 3d 383, 386 (1986).

¶ 25    However, 50% of a person's disposable earnings is subject to garnishment “to enforce any order for the support of any person” where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used) and 60% of a person's disposable earnings is subject to garnishment “to enforce any order for the support of any person” where such individual is not supporting his spouse or dependent child. 15 U.S.C. § 1673(b)(2) (2000). Those percentages rise to 55% and 65% respectively, if disposable earning for any workweek are subject to garnishment “to enforce a support order with respect to a period which is prior to the twelve-week period which ends with the beginning of such workweek.” 15 U.S.C. § 1673(b)(2) (2000). “No court of the United States or any State, and no State (or officer or agency thereof), may make, execute, or enforce any order or process in violation of this section [§ 1673 of the Consumer Credit Protection Act].” 15 U.S.C. § 1673(c) (2000).

11

¶ 26 In 1977, Congress amended the Consumer Credit Protection Act to limit the amount of earnings that could be garnished to enforce a support order. *Long Island Trust Co. v. United States Postal Service*, 647 F.2d 336, 340 (2d Cir. 1981). Previous to the 1977 amendment, there was no limit on the percentage of wages that could be garnished for child support or spousal support and many States allowed 100% garnishment for periods of many months or many years, which sometimes caused the second families of fathers in those cases to face financial ruin. *Id.* at 340-41 (citing 123 Cong. Rec. 6728 (daily ed. Mar. 8, 1977) (statement of Senator Nunn)). Thus, the Consumer Credit Protection Act was amended to place the current 50-65% ceiling on garnishments to enforce support orders. *Id.* at 341.

¶ 27 Compliance with section 1673 of the Consumer Credit Protection Act may become problematic where there is more than one garnishment. *Denson*, 144 Ill. App. 3d at 387-88. The Consumer Credit Protection Act contains no provision controlling the priority of more than one garnishment, making the priority for more than one garnishment governed by State law in the absence of a controlling federal law. *Long Island Trust*, 647 F.2d at 341*; Denson*, 144 Ill. App. 3d at 386. In Illinois, section 12-808 of the Code of Civil Procedure, which governs the duty of the employer served with a summons for lien on an employee's wages, provides:

> "A lien obtained hereunder shall have priority over any subsequent lien obtained hereunder, except that liens for the support of a spouse or dependent children shall have priority over all other liens obtained hereunder. Subsequent summonses shall be effective in the order in which they are served." 735 ILCS 5/12-808(c) (West 2014).

¶ 28 Here, Julie has a right to collect the child support arrearages owed to her by Duane. She did so by way of a child support lien requested by the IDHFS on Duane's subsequent earnings.

12

The notice to Caterpillar of the lien was dated January 25, 2016, and indicated that Duane had the right to send a written request for a hearing within 15 days if he disagreed "with the child support balance owed." There is no indication in the record that Duane requested a hearing with the IDHFS. Duane received his severance check on January 29, 2016, from which Caterpillar garnished 50% of Duane's net earnings for payment to Julie in the amount $11,065.06 and $90 was paid to Tunde, which in total was below the 55% ceiling allowable under the Consumer Protection Act. Duane received a bonus check on March 4, 2016, from which Caterpillar garnished 50% of Duane's net earnings for payment to Julie in the amount $2518.32 and no garnishment for payment to Tunde. The court's order for Tunde's portion of Duane's severance pay in the amount $3452.42 in case number 14-D-03 was not entered until March 4, 2016, and that amount was not due until June 4, 2016.

¶ 29     Duane contends that the distribution of his garnished earnings was improper, where 50% his earnings were applied toward one child support order and less than 1% was applied to the other child support order. Duane argues the garnished earnings should have been distributed equitably between the two child support orders, where he has an obligation to support both of his minor children and no more than 55% of earnings could have been garnished to pay current and past child support.  However, at the time Caterpillar paid out the garnished wages from Duane's severance and bonus checks, there was no indication there were any competing claims on those earnings.

¶ 30     Thus, there is no legal or factual justification for Duane's claim that there was an improper amount garnished from his earnings and paid to Julie to support his request for reimbursement set forth in his petition. In addition, there is no legal or factual justification to reapportion the garnished amounts paid to Julie in order to make an "equitable distribution for

13

[his] two current child support orders." Furthermore, we have no jurisdiction to "reverse and eliminate the order [for Duane] to pay Tunde Osland $3,452.42," which was ordered in another proceeding that is not before us in this appeal. Therefore, we affirm the trial court's order of July 7, 2016, which denied Duane's motion for the return of the garnished and disbursed monies to him.

¶ 31                                    **CONCLUSION**

¶ 32         For the foregoing reasons, we affirm the judgment of the Tazewell County Circuit Court.

¶ 33         Affirmed.